# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *In re Marriage of Micheli*, 2014 IL App (2d) 121245

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ELLEN MICHELI, Petitioner-Appellee and Cross-Appellant, and JOHN MICHELI, Respondent-Appellant and Cross-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-1245 |
| Filed | July 31, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from the dissolution of the parties' marriage, the appellate court agreed with the trial court's decision to forgo permanent maintenance and affirmed the award of maintenance of $3,700 per month reviewable after seven years, but the additional award of 20% of any bonus respondent received during that period was remanded for the imposition of a cap reflecting a determination of the amount necessary to maintain her standard of living during the marriage and meet her needs, the trial court abused its discretion in awarding respondent all of his unvested stock options and restricted stock units, the trial court's order requiring respondent to contribute $10,000 toward petitioner's attorney fees was not an abuse of discretion, but the potential error of giving respondent a credit for paying $5,000 to the representative of the parties' child was directed to be addressed on remand, and the appellate court refused to address petitioner's claim that the trial court erred in awarding respondent the diamond that was his "grandmother's engagement ring stone," even though it was set in her engagement ring, since her notice of appeal failed to indicate that she wanted to appeal from that disposition. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-D-1256; the Hon. David P. Brodsky, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Michael A. Weiman, of Weiman Silberman, LLC, of Chicago, for appellant.

Jay A. Frank and Julie A. Neubauer, both of Aronberg, Goldgehn, Davis & Garmisa, of Chicago, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1    In a marriage dissolution judgment, the trial court ordered respondent, John Micheli, to pay petitioner, Ellen Micheli, temporary maintenance of $3,700 per month plus 20% of John's future bonuses, with the order reviewable after seven years. On appeal, John argues that the maintenance order is an abuse of discretion because it includes an uncapped amount based on a percentage of future bonuses, which has no relation to Ellen's standard of living during the marriage. The parties also dispute the duration of the maintenance: John argues that it should be reduced to three years and Ellen argues that maintenance should be permanent. We hold that the uncapped maintenance based on a percentage of John's future bonuses is an abuse of discretion but that the duration of the maintenance is not.

¶ 2    The trial court also ordered that John's vested stock options would be exercised and divided equally, but in an order clarifying the judgment it then apparently awarded John all of his *unvested* stock options and restricted stock units (RSUs). On cross-appeal, Ellen argues that she is entitled to one-half of the unvested stock options and RSUs. John responds that the court awarded him the unvested stock options and RSUs in exchange for Ellen receiving a larger share of the defined contribution retirement plans. We agree with Ellen that the court abused its discretion in awarding John all of the unvested stock options and RSUs, because this award is unrelated to its distribution of the defined contribution retirement plans and potentially gives John a windfall.

¶ 3    The trial court initially ordered John to contribute $10,000 to Ellen's attorney fees, but it later reduced the amount by $5,000 after giving John credit for a payment to Ellen for the child representative's fee. On cross-appeal, Ellen argues that John should pay more for her attorney fees or that, at a minimum, John should not receive full credit for the payment, which was made from a marital account. We hold that the original contribution order is not an abuse of discretion but that the court potentially erred in crediting John $5,000 for the payment. The potential error should be addressed on remand.

¶ 4    Finally, the court found that a diamond in Ellen's engagement ring is John's nonmarital property and awarded it to John. Ellen contends on cross-appeal that she received the diamond as a gift. We decline to address Ellen's argument because her notice of cross-appeal does not in any way indicate that she wished to appeal from the trial court's disposition of the diamond.

¶ 5                                    I. BACKGROUND

¶ 6        On June 28, 2012, the trial court entered the judgment for dissolution of marriage, which contained the following findings. The parties were married on October 1, 1988. At the time of dissolution, the parties' daughter, Kristin, was emancipated and pursuing her postsecondary education and their son, James, was in high school. On July 27, 2011, the court entered a custody order, which incorporated the parties' parenting agreement.

¶ 7        When the parties married, they both worked at Allstate Insurance Company in New York. Ellen reduced her hours to part-time to care for the children. In 1997, the family moved to Illinois, where John continued working for Allstate and Ellen stopped working outside the home. In 2005, Ellen returned to the workforce, employed part-time as an administrative assistant for Adlai Stevenson High School, and in August 2011 she began working full-time in that position. At the time of dissolution, John was a senior vice president of finance at Allstate.

¶ 8        The trial court found that, during the marriage, the parties lived a reasonable lifestyle, accumulating savings in the form of cash accounts, investments, retirement savings, college savings accounts for the children, and equity in the marital residence. Besides the mortgage on the residence, the parties had no significant debt.

¶ 9        Pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/503(d) (West 2012)), the court divided the parties' assets equally, with certain exceptions. John's 401(k) retirement account and Ellen's individual retirement account were divided so Ellen received 60% and John received 40%. The parties also received their respective vehicles, checking accounts, and savings accounts.

¶ 10       The court ordered John to pay 20% of his net income as child support for James. John's income consisted of his base salary, bonuses, and certain perquisites, including a car allowance. The court calculated child support to be $3,150 per month plus 20% of any future bonuses, until James emancipates. The court entered a subsequent order capping John's annual child support obligation at $350,000, regardless of the amount of his bonuses.

¶ 11       Pursuant to section 504(a) of the Dissolution Act, the court ordered John to pay seven years' maintenance of $3,700 per month, plus 20% of gross future bonuses after child support is deducted. The court noted that the parties were married for 24 years and both were 48 years old. The court emphasized that marriage is a partnership and that Ellen's homemaking services were as significant as John's financial contributions. The court found that it would be inequitable to saddle Ellen with the burden of her reduced earning potential while allowing John to continue in the advantageous position he reached through their joint efforts.

¶ 12       Ellen filed a petition for contribution to attorney fees and costs under sections 508 and 503(j) of the Dissolution Act. See 750 ILCS 5/508, 503(j) (West 2012). Ellen's attorneys billed a total of $182,000, with an unpaid balance of about $74,000. John's attorneys billed a total of $95,000, with an unpaid balance of about $36,000. The court observed that John and his attorneys took a less aggressive and more cost-conscious approach toward the litigation than did Ellen and her lawyers. The court concluded that, although Ellen was awarded maintenance, child support, and a disproportionate share of the marital estate, John could earn more income in the future. After considering the entire judgment, the court found it fair and equitable to order John to contribute $10,000 toward Ellen's outstanding attorney fees. The court entered a judgment in that amount for Ellen's attorneys.

¶ 13    The court also stated, "[t]here being no evidence presented to the contrary, [John] will be awarded the items designated as nonmarital in Respondent's Exhibit #56. Likewise, [Ellen] shall be awarded all of her nonmarital property." John's exhibit identified as nonmarital property several items, including his grandmother's diamond that was set in Ellen's engagement ring.

¶ 14    John and Ellen each filed a posttrial motion. John challenged as excessive the amount and duration of maintenance, specifically requesting an annual cap. He also moved for clarification regarding his obligation to pay $10,000 for Ellen's attorney fees. Ellen also challenged the maintenance award, arguing that it should be reviewable after seven years or, if it shall terminate after seven years, it should be nonmodifiable during that time.

¶ 15    On October 9, 2012, the trial court upheld the maintenance award and declared that it was not subject to review for seven years, but could be reviewed thereafter. The court also clarified its ruling on the stock options and the RSUs: the vested options were divided equally and the unvested stock options and RSUs were granted to John. On November 16, 2012, the court clarified that John's contribution to Ellen's attorney fees would be credited by his $5,000 payment to the child representative.

¶ 16                                II. ANALYSIS

¶ 17                                A. Maintenance

¶ 18    On appeal, John argues that the maintenance award is an abuse of discretion because the duration is too long and the amount is uncapped, based on a percentage of his future bonuses. Ellen responds that maintenance should be permanent. Temporary maintenance is designed to be rehabilitative and to allow a dependent spouse to become financially independent. *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 44. Permanent maintenance, on the other hand, is appropriate where it is evident that the recipient spouse is either unemployable or employable only at an income that is substantially lower than the previous standard of living. *Smith*, 2012 IL App (2d) 110522, ¶ 44.

¶ 19    In awarding temporary or permanent maintenance, the trial court considers the following factors: (1) the income and property of each party; (2) the respective needs of each party; (3) the present and future earning capacity of each party; (4) any impairment to the parties' present or future earning capacity resulting from domestic duties or delayed education or employment opportunities due to the marriage; (5) the time necessary for the party seeking maintenance to acquire the appropriate education, training, and employment and whether that party can support himself or herself through appropriate employment, or whether, as the custodial parent, it is not appropriate for the party to seek employment; (6) the standard of living during the marriage; (7) the duration of the marriage; (8) the age and physical and emotional condition of both parties; (9) the tax consequences of the property division; (10) the contributions by the party seeking maintenance to the education and career of the other party; (11) any valid agreement of the parties; and (12) "any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2012).

¶ 20    A trial court has wide latitude in considering what factors to use in determining reasonable needs, and the trial court is not limited to the factors listed in the Dissolution Act. *Smith*, 2012 IL App (2d) 110522, ¶ 46. " 'No one factor is determinative of the issue concerning the propriety of the maintenance award once it has been determined that an award is

- 4 -

appropriate.' " *Smith*, 2012 IL App (2d) 110522, ¶ 46 (quoting *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 304 (2005)). A maintenance award is within the court's discretion, and the court's decision will not be disturbed absent an abuse of discretion, which exists only where no reasonable person would take the view adopted by the court. *Smith*, 2012 IL App (2d) 110522, ¶ 46.

¶ 21 When a party challenges a trial court's factual findings regarding a maintenance determination, this court will not reverse the findings unless they are against the manifest weight of the evidence. Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *Smith*, 2012 IL App (2d) 110522, ¶ 46. Here, the parties do not dispute the court's factual findings; rather, they argue that the court abused its discretion in setting maintenance based on those findings. We note that the parties cite additional evidence of bonuses John received and expenses Ellen incurred after the dissolution judgment, but the introduction of new evidence on appeal is improper and we decline to consider any evidence that was not presented to the trial court.

¶ 22                                    1. Future Bonuses

¶ 23 In this case, the trial court ordered John to pay seven years' maintenance of $3,700 per month plus 20% of any bonus he receives during that period. John does not challenge the fixed award of $3,700 per month but argues that Ellen is not entitled to any portion of his future bonuses.

¶ 24 For illustration, John emphasizes a fundamental difference between maintenance and child support. John accurately points out that maintenance is designed to allow the recipient spouse to maintain the standard of living enjoyed *during* the marriage. *In re Marriage of Minear*, 181 Ill. 2d 552, 561 (1998). In contrast, a court may award child support in excess of the children's needs or in deviation from the statutory guidelines if necessary to enable the children to enjoy the standard of living they would have enjoyed if the marriage had not been dissolved. *In re Marriage of Scafuri*, 203 Ill. App. 3d 385 (1990). Instead, in this case the trial court's maintenance award included an uncapped amount based on a percentage of John's future bonuses, while child support was capped at $350,000 annually. John concedes that "[a]s a matter of law, the parties['] one (1) remaining minor child is entitled to a superior standard of living than that which he lived before his parents' divorce based upon John's substantial increases in income during the parties' separation."[1]

¶ 25 We agree with John that the maintenance award is an abuse of discretion to the extent that it includes an uncapped amount based on a percentage of his future bonuses. Ordering John to pay 20% of his bonuses as uncapped maintenance sets up a potential windfall for Ellen and has no evidentiary relation to her present needs or the parties' standard of living during the marriage. On remand, the trial court should recalculate the monthly maintenance amount or at

---

[1]In arguing that uncapped maintenance lacks an evidentiary basis, John has brought to our attention the potential error of capping child support. Ellen does not argue for a reversal of the cap on child support, but the cap appears to be a departure from the statutory guidelines. A trial court is statutorily required to protect children's right to support and must explain the evidentiary basis for any departure from the guidelines. 750 ILCS 5/505(a)(2) (West 2012); *In re Marriage of Demattia*, 302 Ill. App. 3d 390, 394 (1999) (a departure from the guidelines must be supported by the record).

least cap the amount from John's future bonuses. If the trial court determines that $3,700 per month is inadequate to meet Ellen's needs and maintain her standard of living during the marriage, it may add a capped portion of John's future bonuses.

¶ 26   Ellen argues that the trial court appropriately used a formula combining a fixed monthly amount and an uncapped amount as a percentage of his future bonuses. Specifically, she argues that, if she were denied an uncapped percentage of John's bonuses, "in the event John received a higher bonus than in years past, Ellen would be deprived of what would have been a more equitable distribution of available cash flow." Though disadvantageous to Ellen, this is the predictable result of properly setting maintenance according to the standard of living enjoyed *during* the marriage. Ellen cites no authority for the proposition that maintenance should be an equitable distribution of the supporting spouse's income *after* the marriage dissolution. A trial court may, under the right circumstances, base maintenance on a percentage of the supporting spouse's income; but in this case, awarding Ellen an uncapped amount as a percentage of John's bonuses is an abuse of discretion because it has no evidentiary relation to her present needs or the parties' standard of living during the marriage.

¶ 27                                     2. Duration

¶ 28   The parties also dispute the trial court's order making the temporary maintenance reviewable after seven years. John argues that three years' maintenance is adequate, and Ellen responds that maintenance should be permanent. Maintenance generally is intended to be rehabilitative to allow a dependent spouse to become financially independent, but permanent maintenance is appropriate where a spouse is unemployable or employable only at an income substantially lower than the previous standard of living. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 652 (2008).

¶ 29   Seven years' maintenance, followed by the opportunity to review, is not so excessive as to be an abuse of discretion under the facts of this case. The long duration of the marriage, the parties' decision that Ellen stop working outside the home for several years, and Ellen's diminished income at the time of the dissolution show that seven years' maintenance is not so long that no reasonable person would take the view adopted by the trial court. See *Smith*, 2012 IL App (2d) 110522, ¶ 46.

¶ 30   Furthermore, the court's decision to forgo permanent maintenance likewise was not an abuse of discretion. Ellen is a college graduate who previously worked in the insurance industry. At the time of the dissolution, she was healthy, 48 years old, and employed full-time. Moreover, she was awarded a substantial portion of the marital estate, which is a statutory factor tending to mitigate her need for maintenance. By denying permanent maintenance, the trial court implicitly determined that Ellen had not shown that, after seven years, she would be employable only at an income substantially lower than the previous standard of living. Based on the evidence presented at trial, the court's decision to deny permanent maintenance was not inequitable such that no reasonable person would take the view adopted by the court. *Smith*, 2012 IL App (2d) 110522, ¶ 46.

¶ 31                         B. Unvested Stock Options and RSUs

¶ 32   Ellen argues on cross-appeal that the trial court erred in awarding John all of his unvested stock options and RSUs. In the original judgment, pursuant to section 503(d) of the Dissolution

Act (750 ILCS 5/503(d) (West 2012)), the court divided the parties' assets equally, including John's vested stock options. At the time of dissolution, the most recent statement of John's portfolio valued the investments as follows: (1) vested stock options potentially worth $125,505, (2) unvested stock options potentially worth $244,501, and (3) unvested RSUs potentially worth $360,058. The values of the unvested stock options and RSUs were not specified in the judgment, but the judgment states that they "shall be divided equally between the parties (50% awarded to John and 50% awarded to Ellen)." In his motion to clarify, John asserted that the values of the unvested stock options and RSUs must be determined.

¶ 33     On October 9, 2012, the trial court entered an order disposing of most of the issues raised in the posttrial motions. In paragraph 3, the court ordered that "John shall immediately exercise all Allstate vested stock options and vested [RSUs] held in the Fidelity account and the net value, after taxes are paid, shall be equally divided between the parties. The unvested stock options and unvested [RSUs] shall remain John's property, if hereafter acquired; and the value of the unvested options and [RSUs]." Despite the ambiguous language, the parties agree that the court apparently intended to modify the judgment by awarding John all of the unvested stock options and RSUs. Ellen argues that the court made no findings to explain why the unvested stock options and RSUs were treated differently than their vested counterparts.

¶ 34     The trial court's original inclusion of both vested and unvested stock options and RSUs in the division of marital property was consistent with section 503(b)(3) of the Dissolution Act, which provides, in relevant part, that options acquired during marriage but before a judgment of dissolution or a declaration of invalidity of marriage are presumed to be marital property, even if they have not vested and even if their value cannot be ascertained. 750 ILCS 5/503(b)(3) (West 2012); *Hmelyar v. Phoenix Controls*, 339 Ill. App. 3d 700, 705-06 (2003). At dissolution, a court must allocate options between the parties, even though the options' values might be unascertainable and the actual property division might occur at a later date. 750 ILCS 5/503(b)(3) (West 2012).

¶ 35     Section 503(b)(3) does not mention RSUs, but the trial court initially determined that John's RSUs were marital property subject to distribution. Like stock options, RSUs are a form of deferred compensation. Upon the expiration of the restriction, an owner automatically receives the RSUs, which become fully tradable common stock. Before they vest, the owner of the RSUs receives taxable quarterly dividends generated by the company.

¶ 36     Despite the trial court's original stated intent of dividing the stock options and RSUs equally, the court apparently awarded 100% of the unvested stock options and RSUs to John. The court heard evidence that the marital estate was worth $868,840, excluding the marital residence and the unvested stock options and RSUs. John received $381,989, or 44%, and Ellen received $486,851, or 56%, of that portion of the marital estate. However, the estimated value of the unvested stock options and RSUs was $604,558, which is very significant. After accounting for the unvested stock options and RSUs, John's share increased to $986,547, or 67%, while Ellen's remained at $486,850, which now amounts to only 33% of the estate.

¶ 37     The estimated values of the unvested stock options and RSUs are based on John's April 2011 financial statement, but they illustrate the disparate impact of the court's decision to deviate from its original ruling that divided the stock options and RSUs equally. The uncertainty of the values of the unvested stock options and RSUs is not an impediment to an equitable distribution when they become vested. We agree with Ellen that the court's decision to award John all of the unvested stock options and RSUs was an abuse of discretion.

¶ 38    In asking us to affirm his award of 100% of the unvested stock options and RSUs, John directs us to paragraph 8 of the October 9, 2012, posttrial order, for the "seminal evidence this Honorable Court needs to uphold the trial court's division of assets." John interprets paragraph 8 as awarding him "his unvested [RSUs] and stock options *in exchange for Ellen receiving an additional 10% of the total defined contribution retirement plan monies held by the parties*." (Emphasis in original.) Paragraph 8 actually refers to Ellen's motion to clarify that the parties' children were not adopted, as the dissolution judgment erroneously stated. The only reference to unvested stock options and RSUs is in paragraph 3, which we already have found to be an abuse of discretion.

¶ 39    In any event, we agree with Ellen that the order does not support John's assertion that the modification of the distribution was in exchange for Ellen receiving an additional 10% of the parties' defined contribution retirement plans (benefit plans). In paragraph 2, the trial court stated, "[t]he value of John's SRIP [supplemental retirement income plan] account as of 6/28/12 shall be divided 50/50 by way of an additional/greater percentage award of either John's Allstate pension or Allstate 401(k) distribution to [Ellen]. John shall keep the SRIP as his sole property."

¶ 40    Paragraph 2 was the court's response to Ellen's motion to clarify how the benefit plans should be divided in light of the fact that John's SRIP account was not subject to a qualified domestic relations order (QDRO). Thus, the order addressed the benefit plans, *i.e.* the pensions and the SRIP account. It appears that, after awarding John his entire SRIP account, the court intended to maintain the 50/50 division of the benefit plans by awarding Ellen a corresponding amount from other assets, which the court can specify on remand. Regardless, the intended 50/50 division of the benefit plans has no relation to the subsequent modification awarding John 100% of the unvested stock options and RSUs.

¶ 41    Nothing in the order suggests that the court modified the distribution of the unvested stock options and RSUs based on a disproportionate distribution of the benefit plans. Moreover, such a modification would have been overcompensation, as the unvested stock options and RSUs have an estimated value of $604,558, while the 60/40 distribution of the benefit plans results in Ellen receiving about $103,000 more than John.

¶ 42                                    C. Attorney Fees

¶ 43    Ellen also argues that the trial court erred in ordering John to pay only $5,000 toward her attorney fees. Originally, the court ordered John to pay $10,000, but in his motion for clarification he pointed out that he was ordered on July 11, 2011, to pay $5,000 for payment of the child representative's fee. The court reduced the contribution award to reflect the payment for the child representative.

¶ 44    We review for an abuse of discretion a trial court's award of attorney fees under section 508(a) of the Dissolution Act (750 ILCS 5/508(a) (West 2012)). See *In re Marriage of Bussey*, 108 Ill. 2d 286, 299 (1985). " 'A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice.' " *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 37 (quoting *In re Marriage of Bradley*, 2011 IL App (4th) 110392, ¶ 26).

¶ 45    Although attorney fees are generally the responsibility of the party who incurred them, section 508(a) of the Dissolution Act permits a trial court to order a party to contribute to the other party's reasonable attorney fees in light of the parties' respective financial situations. 750 ILCS 5/508(a) (West 2012). At the conclusion of any prejudgment dissolution proceeding, a court may award contribution to attorney fees in accordance with section 503(j). 750 ILCS 5/508(a), 503(j) (West 2012). Section 503(j)(2) states that "[a]ny award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j)(2) (West 2012).

¶ 46    Here, maintenance was awarded and therefore sections 503 and 504 both apply. Section 503(d) provides the criteria for division of marital property, which are, generally: (1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital or nonmarital property; (2) each party's dissipation of the property; (3) the value of the property of each party; (4) the marriage duration; (5) the relevant economic circumstances of each party; (6) any obligations from prior marriages; (7) any antenuptial agreements; (8) the age, health, occupation, amount and sources of income, employability, job skills, liabilities, and needs of each party; (9) the custodial provisions for any children; (10) whether apportionment is in lieu of or in addition to maintenance; (11) the reasonable opportunity of each party for future earning or income; and (12) tax consequences. 750 ILCS 5/503(d) (West 2012).

¶ 47    Section 504(a) also lists 12 factors, although some are the same as those in section 503(d). The criteria in section 504(a) of notable difference from section 503(d) are: (1) any impairment of present and future earning capacity due to devoting time to domestic duties or having forgone education, training, employment, or career opportunities due to the marriage; (2) the time necessary to acquire appropriate education, training, or employment; (3) the standard of living established during the marriage; (4) the contributions and services by the recipient party to the education, training, career, or career potential of the other party; and (5) "any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2012). Together, sections 504(a) and 503(d) provide the framework to determine whether the relative financial situations of the parties warrant a contribution to the attorney fees of one party.

¶ 48    The record supports the trial court's original determination that John should contribute $10,000 to Ellen's outstanding attorney fees. Ellen's attorneys billed a total of $182,000, with an unpaid balance of about $74,000. John's attorneys billed a total of $95,000, with an unpaid balance of about $36,000. Ellen argues that John's attorneys caused the disparity in the parties' legal expenses by engaging in delay and other misconduct, but Ellen did not petition for sanctions. Rather, the court observed that John and his attorneys took a less aggressive and more cost-conscious approach toward the litigation than did Ellen and her lawyers. Nonetheless, the court concluded that, although Ellen was awarded maintenance, child support, and a disproportionate share of the marital estate, John could earn more income in the future. After considering the entire judgment, the court found it fair and equitable to order John to contribute $10,000 toward Ellen's fees, and that finding is not an abuse of discretion. The award is not arbitrary, without conscientious judgment, or exceeding the bounds of reason. See *Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 37.

¶ 49    However, in response to John's posttrial motion to clarify, the trial court entered an order on November 16, 2012, stating that John would receive a $5,000 contribution credit, based on

a payment to Joseph Poell, the child representative. On October 23, 2009, the trial court had appointed Poell as the child representative, ordering the parties to divide the fees equally. On June 6, 2011, Poell filed a petition for fees, stating that, as of May 24, 2011, John had paid $5,826.25 and Ellen had paid $3,356.25. The petition also stated that $5,577 remained as an outstanding balance.

¶ 50    On July 11, 2011, the trial court entered an order resolving pending requests for interim fees from counsel for both parties and the outstanding balance of fees owed to Poell. The order states, in relevant part, "[John] shall withdraw $20,000 from the Fidelity Investment account and pay said amount to Ellen within 7 days. Ellen shall then transfer/pay $5,000 to Joseph Poell and $10,000 to [Ellen's attorneys] within 7 days of her receipt thereof, with $5,000 to [John's attorneys]." Pursuant to the order, Ellen distributed $5,000 to Poell, $5,000 to John's attorneys, and $10,000 to her own attorneys.

¶ 51    It appears that the order to pay Poell, a marital obligation, required $5,000 to be paid from a marital asset, the Fidelity investment account. Because John had already paid $5,826.25 and Ellen had paid $3,356.25, the order granting John a $5,000 credit for the payment from a marital account deviates from the trial court's stated intent to divide Poell's fees equally between the parties. The record lacks a transcript of the November 16, 2012, hearing, but if the trial court did not intend to treat the $5,000 payment to Poell as a credit to John's contribution to Ellen's attorney fees, the court may correct the accounting error on remand.

¶ 52                                    D. Diamond

¶ 53    Finally, John's exhibit No. 56 identified as nonmarital property his "grandmother's engagement ring stone," a diamond, which was set in Ellen's engagement ring. The court awarded the diamond to John, stating "[t]here being no evidence to the contrary, [John] will be awarded the items designated as nonmarital property in [John's] Exhibit #56." On cross-appeal, Ellen argues that the trial court erred in finding that the diamond was John's nonmarital property and awarding it to him.

¶ 54    John responds that we lack jurisdiction over the issue, because Ellen's notice of cross-appeal states that she is appealing only "certain provisions" of the dissolution judgment, specifically those related to maintenance, stock options, and attorney fees. John concludes that, because we have jurisdiction over only the parts of the judgment identified in Ellen's notice of cross-appeal, we lack jurisdiction to consider the diamond. Ellen moved for leave to file an amended notice of cross-appeal, but this court denied the motion as untimely. Regardless, Ellen counters that, once appellate jurisdiction attaches to any part of the dissolution judgment, all issues arising from the judgment may be reviewed. We agree with John.

¶ 55    Illinois Supreme Court Rule 303(b)(2) (eff. May 30, 2008) provides that a notice of appeal shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court. The filing of a notice of appeal is the jurisdictional step that initiates appellate review. Unless there is a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is obliged to dismiss the appeal. A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal. Ill. S. Ct. R. 303(b)(2) (eff. May 30, 2008); *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011).

¶ 56    This court lacks jurisdiction over Ellen's cross-appeal of the portion of the dissolution judgment regarding the diamond. Ellen filed a three-page notice of cross-appeal from the judgment, but it does not mention the diamond. Instead, the notice specifies that she is appealing only: (1) paragraph 20, which governs maintenance; (2) paragraph 3, which governs the unvested stock options and RSUs; and (3) paragraph 26 and the ruling on reconsideration, which govern attorney fees.

¶ 57    We recognize that a notice of appeal is to be liberally construed and will confer jurisdiction on an appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22. In this case the notice of cross-appeal specifies the parts of the judgment that relate to maintenance, the unvested stock options and RSUs, and attorney fees. The notice states that, by this cross-appeal, Ellen will ask this court to reverse those portions of the judgment and remand the cause for further consideration by the trial court. The notice makes no reference to any other portions of the judgment.

¶ 58    The notice of cross-appeal concludes with the statement, "[Ellen] shall seek such other and further relief as she may be entitled to by this appeal." However, even liberally construing the notice as a whole, we do not find that this general statement fairly and adequately set out the ruling complained of and the relief sought such that John was advised that Ellen wished to challenge the disposition of the diamond.

¶ 59    Our supreme court has "found notices of appeal to confer jurisdiction even if the order was not expressly mentioned in the notice of appeal, if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.) *Marriage of O'Brien*, 2011 IL 109039, ¶ 23. If the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed, then the notice of appeal is sufficient to confer jurisdiction. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434-35 (1979). In other words, the unspecified judgment must be "a preliminary determination necessary to the ultimate relief sought by the [appellant]." *Burtell*, 76 Ill. 2d at 436.

¶ 60    However, the trial court's ruling that the diamond is John's nonmarital property and the disposition awarding that property to John were not preliminary determinations necessary to the court's judgment on the issues that Ellen specified in her notice of cross-appeal. The issue of the diamond's status as nonmarital property is not "sufficiently closely related" to those issues to confer jurisdiction over that issue. *Burtell*, 76 Ill. 2d at 436. Because the ruling is not properly before us, we will not consider the arguments that Ellen raises regarding it.

¶ 61                                    III. CONCLUSION

¶ 62    The judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

¶ 63    Affirmed in part and reversed in part; cause remanded.