2021 IL App (1st) 192555-U
No. 1-19-2555
March 22, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF, | ) | Appeal from the Circuit Court of Cook |
| VIRGINIA THOMPSON | ) | County, Illinois |
| Petitioner-Appellee, | ) | Domestic Relations Division |
| | ) | |
| v. | ) | No. 17 D 7899 |
| | ) | |
| DAVID THOMPSON | ) | The Honorable |
| | ) | Matthew Link |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justice Hyman and Justice Pierce concurred in the judgment.

**ORDER**

*Held:* **The trial court did not abuse its discretion in a divorce case when it entered an order allocating parenting time unequally, in accord with the court-appointed expert's recommendation. The court did not abuse its discretion when it ordered the parents to decide jointly issues related to their child's health, education, and activities. The court did not abuse its discretion in its attribution of income to one parent, and in its decision not to guess at possible bonuses the other parent might receive. The evidence at trial sufficiently supports the finding that one asset constituted nonmarital property.**

¶ 1        The trial court entered judgments dissolving the marriage of Virginia and David Thompson, allocating their parental responsibilities, distributing the marital estate, and awarding maintenance and child support. David appeals, arguing that the court erred by

limiting his parenting time, by understating Virginia's income, and by overstating David's earning potential. Virginia cross-appeals, arguing that the court should not have required joint parental decisions, and the court should have counted one asset as marital property. Because the evidence adequately supports the trial court's findings of fact, and the court did not abuse its discretion, we affirm the judgments.

¶ 2                                    I. BACKGROUND

¶ 3        Virginia and David married in 1988 and had three children: David, born in 1996, Stephen in 2001, and Andrew in 2006. Andrew, born prematurely, required extra attention, and David provided primary care for Andrew, while Virginia earned the income that supported the family.

¶ 4        Virginia filed a petition for dissolution of the marriage in 2017. She worked as a product manager for a software company. Thomson Reuters bought the company shortly before the trial on the divorce petition. Thomson Reuters made Virginia a vice president and increased her salary to $214,000 per year. Thomson Reuters has a bonus plan that makes Virginia eligible for a discretionary bonus every year, and the bonus could amount to 30% of her earnings.

¶ 5        According to Social Security records, David earned no income from 1991 through 2002, and no income after 2007. In May 2018, the trial court granted Virginia's motion to compel David to get a job. David began working part-time, making deliveries for a delicatessen. He earned $9,600 in 2018.

¶ 6        The court, with the agreement of the parties, appointed Dr. Mary Gardner to evaluate the family in accord with section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604.10(b) (West 2018)). Dr. Gardner interviewed Virginia and David

and briefly observed some of their interactions with Stephen and Andrew. Virginia and David answered questionnaires designed to assist Dr. Gardner with the assessment. Dr. Gardner also spoke with others identified by Virginia and David as knowledgeable about the family. Stephen came of age before trial, and he enrolled in the engineering program at Southern Illinois University.

¶ 7    At the trial, held on several dates from July 2019 to September 2019, Dr. Gardner testified that Stephen and Andrew both did very well in school. She found that Andrew needed therapy because of his tendency to block his emotions. Andrew said he wanted parenting time to be split equally between his parents. Dr. Gardner believed he made the request because "He's cautious about saying negative things about either parent ***, so that he was careful to say equal things about both parents." Dr. Gardner found that David undermined Virginia when she tried to impose rules on the children. Dr. Gardner stated that David's failure to follow through on career plans (acting and screenwriting) made David "not a good role model" for Andrew. She noted that both Virginia and David had low scores on the "Parenting Alliance Measure," designed to help assess the ability of parents to cooperate in raising a child.

¶ 8    In her written summary, Dr. Gardner stated, "Both parents provided a stable home for the three boys. It was clear during my interviews that both parents deeply love their boys and want what is best for them. Both parents have made sacrifices for the boys, although I think this has been done more so by Virginia." She recommended that Virginia should have custody of Andrew most days during the week and every other weekend, while David should have custody every other weekend, plus one overnight and one dinner visit every other week, and the right of first refusal on days when Virginia travels for her job. Dr. Gardner recommended allocating

to Virginia all responsibility for decisions concerning Andrew's health, education, and extracurricular activities.

¶ 9     Virginia testified that she went on 30 overnight trips for work in 2018, and she left the children in David's care. She recounted several incidents in which David withheld information from her about the children, and other incidents in which David did not support her disciplinary measures and her efforts to provide moral guidance for the children. She also contributed some funds to a TD Ameritrade account held in David's name.

¶ 10    David testified that his mother gave him the funds invested through the TD Ameritrade account. David's mother corroborated the testimony. David created a limited liability corporation to use the funds as a trading account. He dissolved the corporation in 2009 because he needed the funds to pay bills. The only deposits Virginia made to the account repaid amounts she used for her expenses. The account was started with a deposit of $82,000, the gift from David's mother. As of the time of trial, about $35,000 remained in the account.

¶ 11    In the questionnaire David filled out for Dr. Gardner, David said that Virginia "was diagnosed with 'borderline personality disorder with elements of narcissism,' by a trained and licensed counselor," and that David spoke to the counselor again "a year or so ago, and [she] remembered us well," and she repeated the diagnosis. David also said the medication Virginia takes to control her epilepsy has "significant physical as well as psychological side-effects." David wrote:

¶ 12    "Virginia is extremely rigid, and very critical of others.  She demands that she always get her way.  *** She is quick to punish perceived transgressions.  She lacks warmth, humor, and

empathy. She can affect an appearance of warmth for short periods of time, to impress or manipulate someone. ***

¶ 13                                                    ***

¶ 14        *** She is trying to impoverish me. *** [S]he is having her lawyer file all sorts of frivolous motions designed to pad the billing hours and drain all our finances. *** Her goal is that there be no marital estate left to share, and then she will be reimbursed by family, leaving me penniless. She told the kids that they will be poor if they live with me after the divorce. ***

¶ 15                                                    ***

¶ 16        *** She is jealous of the wonderful relationship I have with the kids and she is trying to drive a wedge into it. The kids don't actually matter to her, she is just obsessed with punishing me. ***

¶ 17                                                    ***

¶ 18        *** I once took one of those tests designed for housewives that puts a dollar value on all the services a stay-at-home parent provides, and the value of my services on an annual basis came out to be $20,000 more than Virginia's entire gross annual income at the time. ***

¶ 19                                                    ***

¶ 20        *** Andrew is currently in therapy at his mother's insistence. *** I didn't sense any urgent need for Andrew to be in therapy. I felt it was a ploy by Virginia to try to allege that I am a bad parent and am to blame for Andrew needing therapy. But I've gone along with it because I have a therapist myself and I know it can be beneficial. ***

¶ 21        *** Virginia has gone back to court asking the judge to hold me in contempt of court for getting a part time job instead of full time. Her court motion makes no mention of the large hourly rate I've been making in this part time job."

¶ 22        David recounted several incidents for which he thought he and Virginia worked well together to resolve family crises. He continued to live in the family home and share meals with the family as they went through divorce proceedings.

¶ 23        Dr. Gardner testified that she contacted the therapist David cited as the source of the borderline diagnosis. The therapist said she had only a fleeting memory of the case and did not remember speaking with David. The therapist did not say that Virginia suffered from borderline personality disorder. Dr. Gardner, who has experience diagnosing borderline personality disorder, found no indication that Virginia suffered from the illness.

¶ 24        The trial court entered its final judgment allocating parental responsibilities in November 2019. The court ordered Virginia and David to make jointly all decisions relating to Andrew's health, education, and extracurricular activities. The court awarded David parenting time with Andrew in accord with Dr. Gardner's recommendation.

¶ 25        The court entered a separate judgment dissolving the marriage, awarding maintenance and child support, and allocating the parties' assets. The parties do not contest the allocation of the house, several checking accounts, and Virginia's retirement accounts. The court found that the TD Ameritrade account belonged to David as nonmarital property. The court valued the marital estate at $420,698.66 and split that amount evenly between the parties. The court counted Virginia's income as $214,410 per year and held that David could earn $40,000 per year. The court awarded David maintenance of $3,401 per month, in accord with statutory guidelines.

See 750 ILCS 5/504 (West 2018). The court awarded Virginia child support of $802 per month, also in accord with statutory guidelines. See 750 ILCS 5/505 (West 2018). The court permitted Virginia to deduct the monthly child support from her payments to David of maintenance.

¶ 26   David appealed, contesting the allocation of parenting time, the failure to include bonuses in Virginia's income, and the imputation to David of $40,000 per year in income. Virginia cross-appealed to challenge the requirement of joint parenting decisions and the designation of the TD Ameritrade account as nonmarital.

¶ 27                               II. ANALYSIS

¶ 28                      A. Allocation of parental responsibilities

¶ 29   On appeal, David argues that the trial court erred in its allocation of parenting time, and Virginia argues that the court erred by requiring joint parenting decisions. We defer to the trial court's allocation of parental responsibilities, which we will not disturb "unless it (1) is against the manifest weight of the evidence, (2) is manifestly unjust, or (3) results from a clear abuse of discretion." *In re B.B.*, 2011 IL App (4th) 110521, ¶ 32. We will affirm the decision "if there is any basis in the record to support the trial court's findings." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24. We find that the trial court's order concerning the allocation of parental responsibilities was not against the manifest weight of the evidence, manifestly unjust, or a clear abuse of discretion.

¶ 30                               1. Parenting time

¶ 31   David contends that the trial court should not have relied on Dr. Gardner for allocation of parenting time because Dr. Gardner harbored a bias against David. He claims that Dr. Gardner showed her bias by advocating a larger share of parenting time for Virginia than the share

7

requested by Virginia's attorney in an initial settlement conference. However, Dr. Gardner cogently explained her reasons for finding that Andrew would benefit from the greater structure and stable moral guidance she expected Virginia to provide. Andrew told Dr. Gardner he would like to split his time equally between his parents. Dr. Gardner took the statement into account in her recommendation, but she believed it mostly reflected Andrew's desire "to say equal things about both parents."

¶ 32    David finds bias in Dr. Gardner's weighing of the statements from collateral witnesses. Dr. Gardner's report summarized her interviews with the listed witnesses. Dr. Gardner recognized that David did much of the parenting outside the home, but the witnesses did not contradict the evidence that Virginia took on a large share of the tasks within the home, including meal preparation, laundry, shopping, and organizing schedules, while Virginia shouldered the entire burden of earning the family's income. The witnesses also did not contradict Dr. Gardner's impression that Virginia did much of the "hands-on" parenting, even though David spent more time with the children.

¶ 33    David contends that Dr. Gardner's report showed bias against David as a nontraditional stay-at-home father.  We find no support for the accusation. Dr. Gardner's interviews with and observations of the parents, and the answers on the questionnaires, support Dr. Gardner's assessment of David as "immature and egocentric." The trial court gave appropriate weight to Dr. Gardner's opinion concerning the allocation of parenting time.

¶ 34    Under the schedule the court adopted, David will take care of Andrew for 3 days every other weekend for 48 weeks every year (72 days per year), plus two weeks in the summer (14 days), plus one overnight during the week every other week (24 days), and one evening every

other week. If Virginia stays out of town overnight for work 30 days a year, as she did in 2018, and David picks up 25 of those days, he will take care of Andrew 135 days each year and see him an additional 24 evenings. Virginia would take care of Andrew the remaining 206 days. Dr. Gardner's observations and recommendations, along with other evidence in the record, support the trial court's allocation. We find no abuse of discretion in the allocation of time with Andrew.

¶ 35                                      2. Parental decisions

¶ 36       Virginia cross-appeals from the trial court's order directing the parties to decide jointly issues of Andrew's health, education, and extracurricular activities. Virginia points to the evidence of considerable conflict between the parties, and Dr. Gardner's recommendation. Virginia compares this case to *Kocal v. Holt*, 229 Ill. App. 3d 1023 (1992), in which the appellate court reversed an order for joint custody. In *Kocal*, the trial court acknowledged "the vitriolic interrelationship between the parties," (Kocal, 229 Ill.App.3d at 1024), and the appellate court found that "[t]he parties here have not displayed a capacity to cooperate effectively regarding their daughter's upbringing." *Kocal*, 229 Ill. App. 3d at 1026. Here, the parties cooperated successfully to raise three children and together handled parenting crises while living together for 30 years. We recognize that the conflict between the parties, especially about what Andrew needs, may make cooperation difficult. However, both parties have shown that they care about Andrew and want to do what best serves Andrew's interests. The trial court considered the appropriate factors for allocating parental responsibilities. See 750 ILCS 5/602 (West 2018). We find that the trial court did not abused its discretion by ordering joint

9

decisions concerning Andrew's health, education, and extracurricular activities. See *G.L.*, 2017 IL App (1st) 163171, ¶ ¶ 43-46.

¶ 37                                      B. Financial issues

¶ 38                              1. Maintenance and child support

¶ 39        In awarding maintenance and child support, the court must consider the earning capacities of the parties. 750 ILCS 5/504(a)(3), 5/505 (West 2018). "[T]he circuit court has a duty to make its own calculation of a parties' income." *In re Marriage of Evanoff*, 2016 IL App (1st) 150017, ¶ 24. We review the determination of income for abuse of discretion. *Evanoff*, 2016 IL App (1st) 150017, ¶ 23.

¶ 40        The court attributed to Virginia $214,000 per year in income.  The court did not include possible bonuses in the calculation.  "[M]aintenance is designed to allow the recipient spouse to maintain the standard of living enjoyed *during* the marriage." (Emphasis in original.) *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 24.  Virginia never earned as much as $214,000 before she filed for divorce.  Thomson Reuters did not commit itself to awarding any bonus, and it had not awarded Virginia any bonus prior to trial.  The trial court did not abuse its discretion in its maintenance determination.  See *Micheli*, 2014 IL App (2d) 121245, ¶ 27.

¶ 41        David also objects to the imputation to him of $40,000 per year in income. "Imputation is appropriate in cases of voluntary unemployment or voluntary underemployment. [Citation.] The trial court's decision whether to impute income is reviewed for an abuse of discretion." (Emphasis omitted) *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 39.  David admitted that he earned a "large hourly rate *** in []his part time job."  He also told Dr. Gardner, in his written responses to the questionnaire, that "the value of [his] services on an annual basis came

10

out to be $20,000 more than Virginia's entire gross annual income" at one time. The trial court did not abuse its discretion in its imputation of income. See *Ruvola*, 2017 IL App (2d) 160737, ¶¶ 39-46.

¶ 42                                2. Allocation of assets

¶ 43        Virginia contends that the trial court should have considered the TD Ameritrade account marital property. "The trial court's determination that an asset is nonmarital property will not be disturbed on appeal unless that determination is against the manifest weight of the evidence." *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 140 (1996). "[T]he Act creates a rebuttable presumption that all property acquired after marriage and before dissolution is marital property regardless of the manner in which title is held." *Hegge*, 285 Ill. App. 3d at 141. "There is another presumption that a transfer from a parent to a child is presumed to be a gift, and that presumption may be overcome by clear and convincing evidence to the contrary." *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992). "In cases where a determination of the nature of the property at issue [is] found to be subject to these conflicting presumptions, the presumptions are considered to cancel each other out, and a simple manifest weight of the evidence standard is applied." *Hagshenas*, 234 Ill. App. 3d at 186-87.

¶ 44        At trial, David and his mother testified that she gave him $82,000 in 2006 to open a trading account with TD Ameritrade. Virginia testified that she later made contributions to the account, but David explained that Virginia's payments only reimbursed the account for amounts Virginia used for her own expenses. The trial court found David's testimony on this issue credible. The trial court's finding that the TD Ameritrade account belonged to David as his nonmarital property is not contrary to the manifest weight of the evidence.

¶ 45    Finally, David includes in his brief an argument consisting of a single sentence: "Even assuming arguendo, that the circuit court properly imputed $40,000 to David, it should have taken the parties' disproportionate earning capacity (approximately $174,000 not including Virginia's annual bonus) into consideration when it awarded David his one-share of the marital estate." Virginia notes that David did not include any issue concerning distribution of the marital estate in his notice of appeal. David does not rebut Virginia's argument and does not mention the allocation issue in his reply brief. The failure to include the issue in the notice of appeal leaves this court without jurisdiction to consider the issue. See *Micheli*, 2014 IL App (2d) 121245, ¶ 56.

¶ 46                                III. CONCLUSION

¶ 47    The trial court did not abuse its discretion when it relied on the opinion of the court-appointed expert regarding the allocation of parenting time. The trial court also did not abuse its discretion by rejecting the expert's recommendation and ordering the parties to jointly decide issues concerning Andrew's health, education, and extracurricular activities. The court appropriately used Virginia's salary of $214,000 per year and David's imputed income of $40,000 per year to set maintenance and child support. The evidence sufficiently supports the court's finding that David owned the TD Ameritrade account as nonmarital property. Accordingly, we affirm the trial court's judgment.

¶ 48    Affirmed.