# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Evanoff*, 2016 IL App (1st) 150017

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MARGARETE EVANOFF, Petitioner-Appellee, and CLAYTON TOMASEK, Respondent-Appellant. |
| District & No. | First District, First Division<br>Docket Nos. 1-15-0017, 1-15-0441 cons. |
| Filed | June 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-D-11134; the Hon. Dominique C. Ross, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lake Toback, of Chicago (Michael G. DiDomenico, of counsel), for appellant.<br><br>Weiman Silberman, LLC, of Chicago (Michael A. Weiman, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1      In September 2014, the circuit court entered a judgment dissolving the marriage of petitioner, Margarete Evanoff, and respondent, Clayton Tomasek. In its judgment, the court made several factual findings, ordered maintenance be paid to respondent, and divided the marital assets and debts. The court found respondent to be earning $28,500, but based on his skills, age, and experience imputed an additional $11,500 to him for a total income of $40,000. Based on this, the court awarded respondent $4300 a month in permanent maintenance. The circuit court ordered the parties to equally split the proceeds from the sale of the marital residence. The circuit court rejected respondent's dissipation claim regarding the use of stock obtained during the marriage to fund the parties' children's college education. The court also rejected his dissipation claim related to petitioner's use of funds from the home equity line of credit. With the exception of the two pieces of real property owned by the parties, the court divided the marital assets roughly 60/40 in favor of respondent. During the proceedings, petitioner acknowledged she received distributions on an irregular basis as a former partner at Arthur Andersen. The judgment did not address these payouts but on respondent's motion to reconsider, the court ordered the proceeds split 50/50. This same order also vacated the portion of the divorce judgment which allowed petitioner to claim the dependency tax exemptions. After reconsideration, the court decided to defer to the Internal Revenue Service guidelines on the subject.

¶ 2      Respondent challenges virtually every aspect of the judgment on appeal. He argues the circuit court (1) erred in imputing income to him, (2) erred in not averaging the income of Evanoff, (3) erred in the valuation of the martial residence, (4) erred in the calculation of Evanoff's capital account, (5) erred in finding no dissipation on the part of Evanoff, (6) erred in its distribution of the martial estate, (7) erred in its maintenance award to Tomasek, (8) erred in the awarding of attorney fees, (9) erred in the allocation of dependency tax exemptions, and (10) erred in failing to require Evanoff to provide notice to Tomasek of when distributions are made from Arthur Andersen. For the following reasons we affirm the judgment of the circuit court in all respects.

¶ 3                         JURISDICTION

¶ 4      The circuit court entered its judgment for dissolution of marriage on September 24, 2014. On October 14, 2014, respondent filed a motion to reconsider the judgment and a motion to reopen the proofs. On December 4, 2014, the circuit court denied the motion to reopen proofs, but took the motion to reconsider under advisement. On January 5, 2015, respondent filed his first notice of appeal. On January 25, 2015, the circuit court entered an order disposing of the motion to reconsider. On February 13, 2015, respondent filed his second notice of appeal. On March 11, 2015, we granted respondent's motion to consolidate the two appeals. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 5                         BACKGROUND

¶ 6      The petitioner, Margarete Evanoff (Evanoff), and respondent, Clayton Tomasek (Tomasek), were married on July 7, 1990. They have three children, all of whom are now

emancipated. At the time of the marriage, both parties were pursuing independent careers, with Evanoff pursuing a career in financial services consulting and Tomasek pursuing his career as a professional musician and recording artist.

¶ 7        Evanoff filed a petition for a dissolution of marriage on November 15, 2010. Tomasek filed his response on December 9, 2010. By agreement, the parties separated in September, 2011. The parties then proceeded with three years of prejudgment litigation. On February 15, 2013, Tomasek filed a notice of intent to claim dissipation. It alleged that from November 16, 2010, to December 9, 2013, Evanoff withdrew $121,092 from the parties' Wells Fargo account and deposited it into a 529 college account for one of the parties' daughters. It further alleged that from November 16, 2010, to December 9, 2013, she also withdrew $126,316.25 from the parties' Wells Fargo account and deposited it into a 529 college account for the parties' other daughter. On February 20, 2013, Evanoff filed her response denying the allegations of dissipation. The case proceeded to trial on October 8, 2013. Only three witnesses were called to testify at trial: Tomasek, Evanoff, and a third party, Laura Baratto.[1]

¶ 8        The parties agreed that Evanoff was the primary bread winner for the family throughout the marriage. Evanoff became employed at Arthur Andersen as a consultant prior to the marriage, eventually reaching the level of partner. Evanoff lost her job when Arthur Andersen collapsed following the Enron scandal in 2002. After the collapse of Arthur Andersen, Evanoff became employed at KPMG BearingPoint. Evanoff was at KPMG BearingPoint for three years before moving to a position at Accertive Health, a small privately held corporation. As part of her compensation for agreeing to work there, Evanoff received stock options that she could exercise if the company ever went public. Evanoff was at Accertive Health for about a year before losing her position. After a brief gap in her employment, Evanoff became a partner at Deloitte, where she currently works.

¶ 9        As part of becoming a partner at Deloitte, Evanoff was required to borrow approximately $400,000 to fund the formation of her capital account. Evanoff testified that her compensation from Deloitte and the value of her capital account vary based on the number of "units" the partnership committee assigned to her. Evanoff testified that the number of "units" she receives is based on her performance as evaluated by the committee. She explained that she does not participate in the evaluation and has no input over whether her "units" are increased or decreased. As an example, Evanoff testified that at the beginning of 2011 she had 500 units but that was subsequently reduced by the committee to 400 before the end of the year. At the time of trial, the parties stipulated she earned $348,880 annually.

¶ 10       When the parties first met, Tomasek worked as a box office manager at The Vic theater in Chicago. Shortly before marriage, Tomasek's band, Slammin Watusis, signed a record contract with Epic Records. Tomasek was also part of a band named Green. As part of both bands, Tomasek toured both nationally and internationally. Evanoff and the parties' minor son joined Tomasek on many of the international tours, though after 1995 his career began to wane. The parties disputed the length of Tomasek's musical career but agreed that if he made any money, it was nominal at best. During the divorce proceedings itself, Tomasek was employed by Cora Italian Specialties in "warehouse/sales," for which he received both an hourly wage

---

[1]Laura Baratto's testimony related solely to Evanoff's claim of dissipation. The circuit court denied this claim and it was not cross-appealed.

and a commission from his sales. When the judgment was entered, he was making $28,500 annually.

¶ 11   The parties had three children during the course of the marriage: DCT (23 years old when the judgment was entered), AMT (20 years old when the judgment was entered), and ADT (18 years old when the judgment was entered). The circuit court found that while the children were young, the parties shared domestic responsibilities. The testimony of the parties at trial confirmed this. Tomasek bore the responsibilities of raising the children during the day, while Evanoff would often watch the children at night and weekends while Tomasek performed or practiced with his bands. While finding that the parties shared domestic responsibilities, the circuit court acknowledged that Tomasek often took on a larger portion of those domestic responsibilities.

¶ 12   In 2003, the parties moved to the marital residence in Riverside, Illinois. The parties lived a comfortable, but not extravagant lifestyle. The testimony of the parties demonstrated that Evanoff's income was used to support the family. She also was responsible for handling the family's finances and investment with little input from Tomasek. The record reflects that Tomasek rarely concerned himself with the finances of the family and never objected to Evanoff's handling of them.

¶ 13   Child support was not an issue as the parties' children were no longer minors. However, the parties disputed how they would fund the daughters' college education. During the breakdown of the marriage, Evanoff did use the sale of the Accertive Health stock to fund the daughters' college funds. Based on this, Tomasek filed a notice of dissipation alleging that the transfer of the funds to the daughter's 529 accounts constituted dissipation under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2012)). Also included in this motion was a claim for dissipation related to Evanoff's purchase of a new Porsche after the breakdown of the marriage.

¶ 14   At trial, Evanoff testified that during the marriage, the parties discussed and agreed to using the Accertive Health stock to fund the children's college expenses. Tomasek acknowledged having such discussions, but disputed that the parties ever came to an agreement. However, he admitted that he did not want his children to have to take out loans to fund their education but had not personally made any provisions for paying the cost of college. At the start of trial, he testified that their education could be funded from marital assets but later stated the funds should come from wife's future income and not from the marital estate.

¶ 15   Based upon the testimony of the parties and the evidence presented at trial, the circuit court entered a divorce judgment dissolving the marriage. The judgment awarded Tomasek $4300 a month in permanent maintenance. As part of this, the court imputed an additional $11,500 to Tomasek's income based on his education, skill, and experience. The court ordered a 50/50 split of the proceeds from the sale of the marital residence along with the sale of unimproved land the parties owned in Colorado. The court held Evanoff responsible for all costs related to the residence until it was sold. The court awarded Tomasek the following assets: (1) Evanoff's Wells Fargo 401(k)—$512,654.57; (2) Vanguard Deloitte Profit Sharing—$237,339.07; (3) Tomasek's Wells Fargo 401(k) $2,181.06 and; (4) 2011 GMC Acadia—$21,320. Evanoff was awarded the following: (1) Vanguard Deloitte Profit Sharing—$244,609.79; (2) Wells Fargo Command Savings—$24,801.12; Wells Fargo Command Checking—$1,817.41; Wells Fargo Command Investments $29,610.91; Chase Bank Savings—$2,274.91; Deloitte Capital

- 4 -

Account $162,750; and 2012 Porsche Cayenne—$49,799. This represented a roughly 60/40 split of the marital assets in favor of Tomasek.

¶ 16    The court denied Tomasek's claim of dissipation related to the use of the Accertive Health stock to fund the daughters' college education. The court also rejected his claim of dissipation related to the purchase of the Porsche. The circuit court found that outside of the debt related to the marital residence, the marital debt was $14,500 on Tomasek's Capital One credit card and Evanoff's capital account loan. The credit card debt was for Tomasek's attorney fees incurred during the proceedings, and the court ordered him solely responsible for paying it off. The court awarded Tomasek $15,000 toward his attorney fees.

¶ 17    The court ordered each party responsible for maintaining his or her own medical coverage, but Evanoff remained solely responsible for obtaining health insurance for the children until their graduation from college. The parties are held jointly responsible for any uncovered medical expenses. Finally, the judgment allowed Evanoff to take children as tax exemptions as long as federal and state law allowed.

¶ 18    Tomasek timely filed a notice of reconsideration essentially challenging every aspect of the judgment. The circuit court denied the motion in all respects expect as to the child tax credit. The court vacated the part of the judgment that allowed Evanoff to claim them and ordered the parties to abide by the federal government's guidelines on the issue.

¶ 19    Tomasek timely filed a notice of appeal on February 13, 2015. He raises the following issues for our review: (1) whether the circuit court erred in imputing income to him; (2) whether the circuit court erred in not averaging the income of Evanoff; (3) whether the circuit court erred in the valuation of the marital residence; (4) whether the circuit court erred in the calculation of Evanoff's capital account; (5) whether the circuit court erred in finding no dissipation on the part of Evanoff; (6) whether the circuit court erred in its distribution of the marital estate; (7) whether the circuit court erred in its maintenance award to Tomasek; (8) whether the attorney fees award should be vacated based on the alleged errors in the maintenance award and the division of the marital estate; (9) whether the court erred in the allocation of dependency tax exemptions; and (10) whether the circuit court erred in failing to require Evanoff to provide notice to Tomasek of when distributions are made from Arthur Andersen.

¶ 20                                    ANALYSIS

¶ 21    Tomasek raises 10 issues involving the divorce judgment entered by the circuit court. We take each one in turn.

¶ 22    Tomasek alleges that the circuit court erred in determining the parties' income. He argues that the trial court erred in imputing an additional $11,500 to his income. He argues the imputation of $11,500 finds no support in the record and specifically points to the lack of expert testimony.

¶ 23    A circuit court's determination of income in a divorce case is reviewed for an abuse of discretion. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103 (1995). An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court. *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 31 (1986).

¶ 24    As part of the divorce proceedings, Tomasek made a claim for permanent maintenance from Evanoff. In awarding permanent maintenance, the circuit court is required to follow the

guidelines set forth in section 504 of the Act. 750 ILCS 5/504(a)(1)-(12) (West 2012). One of those factors is the realistic "present and future earning capacity of each party." 750 ILCS 5/504(a)(3) (West 2012). Additionally, the circuit court has a duty to make its own calculation of a parties' income, and cannot rely on a parties' concession as to it. *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 90.

¶ 25 The lack of expert testimony is of no consequence. By seeking maintenance pursuant to section 504, Tomasek was on notice that the circuit court would have to engage in an analysis of his present and future earning capacity before setting maintenance. Furthermore, throughout the proceedings, Evanoff put Tomasek on notice that she would argue he was failing to fulfill his employment income potential. Tomasek cites no case that requires the circuit court to hear expert testimony before making an income imputation.

¶ 26 At the time the divorce judgment was entered, Tomasek was employed in warehousing and sales and made $28,500. The circuit court heard testimony that Tomasek had a bachelor's degree in communications and had worked as a professional musician for at least a decade. It heard further testimony that after the children entered school full time and his band's performances decreased, Tomasek did not seek out any employment or educational opportunities. The circuit court heard testimony that he had not pursued any type of further employment in the music industry or related to his communications degree. Even after the breakdown of the marriage in 2009-10, Tomasek did not seek additional education or vocational training to advance his employment opportunities. Tomasek openly admitted that he was waiting to see what happens in the divorce proceedings before expending anymore effort in seeking better employment. Based on this record, the circuit court did not abuse its discretion in imputing an additional $11,500 to Tomasek.

¶ 27 Tomasek also challenges the trial court's calculation of Evanoff's income. Specifically, Tomasek alleges that the circuit court should have averaged Evanoff's income from the past three to five years prior to the entry of the divorce judgment. It is within the sound discretion of the circuit court to determine whether income averaging is necessary and such a decision will not be disturbed absent an abuse of that discretion. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1024 (2003).

¶ 28 In its judgment dissolving the marriage, the circuit court stated, "WIFE is currently a partner at Deloitte Consulting LLP and earns $348,880.00 annually, as stipulated by the parties." In Illinois, courts look favorably upon stipulations, which promote disposition of cases and simplification of issues. *Dawdy v. Sample*, 178 Ill. App. 3d 118, 127 (1989). Stipulations by parties or their attorneys will be enforced unless there is a proper showing the stipulation is unreasonable, violative of public policy, or the result of fraud. *Strawbridge v. Department of Law Enforcement*, 70 Ill. App. 3d 229, 231 (1979). In his brief, Tomasek does not address or challenge the court's finding that the parties' stipulated to Evanoff's income. Because the parties' stipulated to Evanoff's income and Tomasek makes no argument for setting aside the stipulation, we find the circuit court did not abuse its discretion in not averaging Evanoff's income.

¶ 29 In both his brief and at oral argument, Tomasek argued the trial court abused its discretion by failing to take into account the prior three years of Evanoff's income. At oral argument, Tomasek specifically argued such an averaging was required by Illinois case law. See *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 655 (1998) (finding that under the circumstances using a three-year income averaging was appropriate for determining husband's child support

obligation); *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103-04 (1995); *In re Marriage of Garrett*, 336 Ill. App. 3d 1018 (2003). However, Tomasek's argument is misplaced; income averaging is left to the sound discretion of the court. All the cases cited by Tomasek recognize this. See *Nelson*, 297 Ill. App. 3d at 655 (findings of the trial court as to net income will not be disturbed absent an abuse of discretion); *Freesen*, 275 Ill. App. 3d at 103 (net income is reviewed under an abuse of discretion); *Garrett*, 336 Ill. App. 3d at 1024 (a trial court's finding of net income is within the discretion of the trial court). Accordingly, even if there had been no stipulation, Tomasek's argument that the trial court must use income averaging is misplaced. It is within the discretion of the trial court to do so.

¶ 30    Next, Tomasek argues that the trial court erred in its valuation of the marital assets. He raises several sub-issues related to this argument. We take each one in turn; however, the standard of review is the same for each sub-issue. The valuation of assets will ordinarily not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Grunsten*, 304 Ill. App. 3d 12, 16-17 (1999). Furthermore, we acknowledge that dividing marital property in just proportions does not require mathematical equality, but rather, "[t]he touchstone of proper apportionment is whether it is equitable in nature." (Internal quotation marks omitted.) *In re Marriage Heroy*, 385 Ill. App. 3d 640, 661 (2008).

¶ 31    The first issue related to the marital assets is the circuit court's alleged valuation of the marital residence and the amount of money Tomasek will receive upon its sale. Neither party presented any expert testimony on the valuation of the home. The dissolution of marriage judgment noted the parties gave a valuation to the marital home in excess of $1 million and agreed to list the home for $1.9 million. Prior to the sale of the home, Evanoff is responsible for all costs incurred, including the mortgage payment. The judgment provides that the parties will each receive 50% of the proceeds upon the sale of the property.

¶ 32    Tomasek's argument stems from the circuit court's order on his motion to reconsider. In the order, the circuit court stated, "[Tomasek]'s total liquid asset award amounts to $773,494.47 plus an estimated $900,000.00 upon the sale of the marital residence and another $30,000.00 upon the sale of the real property in Colorado, for an approximate award of $1,703,494.70." On appeal, Tomasek argues that circuit court erred in estimating that he would receive $900,000 from the sale of the marital residence.

¶ 33    While the trial court may have been imprudent in believing that Tomasek would receive $900,000 from the sale of the home, we do not find the 50/50 split to be against the manifest weight of the evidence when viewed against the totality of the marital apportionment. As noted, the trial court had no expert testimony before it regarding the marital home. Additionally, any miscalculation on the part of the court as to Tomasek's share also impacted Evanoff since the court ordered a 50/50 split (*i.e.*, the court also assumed Evanoff would receive $900,000). Furthermore, Evanoff is solely responsible for the mortgage and upkeep of the house while it remains unsold. Accordingly, Tomasek will continue to gain equity in the marital residence while it remains unsold without having to expend any of his own postjudgment resources. Based on these facts and the division of the other marital assets, the trial court did not abuse its discretion in awarding a 50/50 split of the marital residence.

¶ 34    Next, Tomasek argues the circuit court erred in valuating Evanoff's capital account with Deloitte. Neither party presented any expert testimony regarding the valuation of the Deloitte capital account. At trial, Evanoff testified that the value of her capital account was $129,000. In closing argument, Evanoff acknowledged that during the course of the proceedings, she had

made loan payments to the account, which had increased its value to $162,750. The circuit court accepted this valuation in the divorce judgment.

¶ 35 On appeal, Tomasek argues that Evanoff's 2013 K-1s show a total value of her capital accounts to be $484,784. This valuation does not appear on either the 2012 or 2013 K-1s cited by Tomasek to support his argument. Tomasek does not identify how he arrived at this total valuation. Moreover, while Tomasek accepts Evanoff's testimony regarding the amount of capital debt in the account, he rejects the $129,000 net valuation she ascribed to it based upon the agreed capital debt. But as just noted, he fails to support his own valuation. Accordingly, Tomasek has failed to demonstrate that the circuit court's finding regarding the Deloitte capital account valuation was against the manifest weight of the evidence.

¶ 36 Next, Tomasek argues that the circuit court erred in finding no dissipation on the part of Evanoff. Specifically, Tomasek argues that the $247,000 transfer to the children's 529 college accounts and Evanoff's use of $50,000 from the home credit line represents dissipation.

¶ 37 Dissipation is generally defined as the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 343 (1996). Whether a given course of conduct constitutes dissipation depends upon the facts of each case. *In re Marriage of Hahin*, 266 Ill. App. 3d 168, 171 (1994). Based on the credibility of the witnesses, the circuit court decides if the funds were spent for legitimate family expenses, which were necessary and appropriate. *In re Marriage of Gurda*, 304 Ill. App. 3d 1019, 1026 (1999). The circuit court's determination regarding dissipation will not be reversed on appeal absent an abuse of discretion, which occurs only when no reasonable person could adopt the trial court's view. *Hahin*, 266 Ill. App. 3d at 171. Under this standard of review, we give great deference to the circuit court's credibility determinations, and we will not substitute our judgment for that of the circuit court "because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007).

¶ 38 At trial, Evanoff acknowledged that the $247,000 had come from the sale of the Accertive Health stock. She testified that after acquiring the stock, the parties discussed and agreed to use it to fund the children's college funds. She further testified that the money went solely to fund the daughters' 529 funds. She acknowledged some of the funds were used to pay for the youngest daughter's final high school year as well.

¶ 39 At trial, Tomasek acknowledged discussions about using the stock to fund college tuition occurred but denied any agreement was reached. Tomasek testified that he did not believe his children should have to take loans out to pay for their education. At the beginning of the trial, Tomasek testified that he believed the college expenses should be paid out of marital funds; however, he later changed his position and testified that Evanoff should be forced to pay the college expenses out of her own income and her share of the assets. Tomasek admitted he had made no provisions for funding the college funds.

¶ 40 In the divorce judgment, the circuit court rejected the claim of dissipation. The court found that throughout the marriage, Evanoff handled the finances of the family with little to no input or objection from Tomasek. The court further found that it was the intent of the parties to "plan, save, and pay for the children's college and related expenses."

¶ 41 Based on the evidence presented, the circuit court did not abuse its discretion in denying the dissipation claim. At the beginning of trial, Tomasek agreed that marital funds (which the

stock was) should be used to fund the college expenses. It was only later that he changed positions and argued that Evanoff should fully fund the accounts. Furthermore, Evanoff testified that the parties agreed to use the stock to fund the college funds and, at the time, Tomasek thought it was a great idea. Tomasek acknowledged that these conversations took place, but denied any agreement. The circuit court was in the best position to determine the credibility of the parties' testimony and was free to reject Tomasek's testimony on the matter. Based on the testimony of the parties and the other evidence before it, the circuit court did not abuse its discretion in finding Evanoff's use of the Accertive Health stock to fund the 529 accounts did not constitute dissipation.

¶ 42 Tomasek also alleges Evanoff's use of $50,000 from the home equity loan constitutes dissipation. However, on appeal this issue is waived. Tomasek's notice of dissipation did not allege any dissipation related to the home equity loan nor did he make an allegation of dissipation at trial. The failure to give notice and make any allegation of dissipation regarding the home equity loan at trial constitutes a waiver of the issue. See *Zito v. Zito*, 196 Ill. App. 3d 1031, 1036 (1990) (finding waiver of a dissipation issue because the husband failed to provide notice at the trial court level).

¶ 43 Next, Tomasek argues that the entirety of the circuit court's marital estate division was done in error.[2] Tomasek argues the division is not equitable because the assets he was awarded are not liquid and that Evanoff should be responsible for 100% of the credit card debt.

¶ 44 Under section 503(d) of the Act, the trial court must divide the marital estate in just proportions. 750 ILCS 5/503(d) (West 2012). The relevant factors include the duration of the marriage, each party's contribution to the family unit, including a homemaker's contribution, the relative economic circumstances of each spouse at the time the division becomes effective, the spouses' relative abilities for future acquisition of assets and income, and tax consequences of the division. *Id*.

¶ 45 "The touchstone of proper apportionment is whether it is equitable in nature, with each case resting upon its own facts." *In re Marriage of Scoville*, 233 Ill. App. 3d 746, 758 (1992). The distribution of the marital estate rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Winne*, 239 Ill. App. 3d 273, 280 (1992). Debts incurred by one party following separation may be considered marital, and it is within the trial court's discretion to order that the debts be paid by the other party. *In re Marriage of Stufflebeam*, 283 Ill. App. 3d 923, 929 (1996). The court's division of assets will be disturbed only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Winne*, 239 Ill. App. 3d at 280.

¶ 46 With the exception of the two pieces of real property, the circuit court split the marital assets roughly 60/40 in favor of Tomasek. Tomasek received marital assets valued at $773,494 while Evanoff received marital assets valued at $515,663. Tomasek will also receive half of any future Arthur Andersen distributions. Evanoff was left solely responsible for the mortgage and upkeep on the marital residence prior to its sale, while both will share equally in any proceeds from the sale. Evanoff was also left responsible for her Deloitte capital loan. The circuit court allocated the parties' credit card debt, $14,500, to Tomasek. This debt represented attorney fees Tomasek incurred during the divorce proceedings. However, the divorce judgment also required Evanoff to pay Tomasek $15,000 in attorney fees. Each party was

---

[2]This argument excludes the Colorado property.

awarded his or her automobile, both purchased after the parties separated. While not part of the marital estate, it must also be recognized that Tomasek will receive $4300 per month in permanent maintenance. It must also be recognized the divorce judgment holds Evanoff responsible for the continued support of the parties' children through college. She must also continue to carry the health insurance for them.

¶ 47   Of the roughly $1.3 million marital estate, the liquid assets account for about $58,500, or around 5%. Various retirement accounts and other illiquid assets constituted the bulk of the estate. While the circuit court did award the majority of the liquid assets to Evanoff, the circuit court also held Evanoff responsible for the vast majority of the parties' marital debt. Additionally, the court awarded the vast majority of the retirement accounts to Tomasek, there by requiring Evanoff to start new retirement savings, and relieving Tomasek of that burden.

¶ 48   Since the parties' separation, Evanoff has paid the mortgage on the marital residence and will continue to do so until it is sold. Additionally, Evanoff is solely responsible for the Deloitte loan, a marital debt of $217,000. The only debt Tomasek is responsible for is the $14,500 in credit card debt used to pay his own attorney. Tomasek receives $4300 in maintenance and will receive cash from the sale of both the marital home and the Colorado property. Moreover, Evanoff is solely responsible for the continued support of the children's needs during college. We find this division of marital assets to be fair and equitable. Accordingly, the circuit court did not abuse its discretion in making its award.

¶ 49   Tomasek also challenges the circuit court's award of $4300 a month in permanent maintenance awarded to him. Section 504 of the Act provides for the award of maintenance upon the court's consideration of the listed statutory factors. 750 ILCS 5/504 (West 2012). "As a general rule, 'a trial court's determination as to the awarding of maintenance is presumed to be correct.' " *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 650 (2008) (quoting *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063 (2005)). The amount of maintenance award lies within the sound discretion of the trial court, and this court must not reverse that decision unless it was an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005).

¶ 50   Tomasek argues that the evidence at trial demonstrated he had living expenses of at least $14,020. The circuit court found the evidence demonstrated approximately $2900 per month in expenditures. The court further found the couple lived a modest lifestyle, sent their children to private school, and took about two vacations per year. The court heard testimony from both parties that after the parties separated, Tomasek provided an itemized list to Evanoff for reimbursement. Both parties agreed Evanoff had reimbursed Tomasek all expenses he incurred until June 2012. Evanoff testified that Tomasek's monthly expenses never exceeded $3000 during this period, and this spending reflected his standard of living throughout the marriage.

¶ 51   Based on his prepared May 2013 financial disclosure statement Tomasek argues his living expenses required at least $14,020. We disagree. He testified that the statement represented estimated future living expenses of $14,020. He based this number on what he believed his expenses were during the marriage and used no records to prepare the statement. This is speculation. Furthermore, the court heard undisputed testimony that Tomasek had little if any involvement with the family's finances, thus he was in no position to know what the expenses were during the marriage.

¶ 52   Based on the testimony and the evidence produced at trial, the circuit court did not abuse its discretion in awarding Tomasek $4300 a month in permanent maintenance.

¶ 53    Tomasek also challenges the judgment requiring him to pay half of uncovered medical expenses should they occur. "The trial court has discretion to order payment of a health insurance premium, and the trial court's ruling will not be disturbed on review absent an abuse of discretion." *In re Keon C.*, 344 Ill. App. 3d 1137, 1146 (2003). "Similarly, despite discernible guidelines on contingent medical expenses not covered by insurance, the trial court also has discretion to order the payment of uncovered and extraordinary medical expenses." *Id.*

¶ 54    Here, the circuit court was fully aware of the parties' respective financial positions. Evanoff was charged with the sole responsibility of paying and maintaining health insurance for the children. Evanoff is also responsible for other expenses the daughters incur while still in college. Furthermore, the court heard testimony that the parties' eldest son was emancipated and presently employed. Accordingly, it will not be long before all of the children will be required to find their own health insurance. In light of the fact that Evanoff is responsible for almost all expenses the children may incur while still in college, the trial court did not abuse its discretion in requiring Tomasek to pay half of any uncovered medical expenses, if any.

¶ 55    Next, Tomasek challenges the award of attorney fees. The divorce judgment awarded him $15,000 toward his outstanding balance of $43,000 in attorney fees. He argues Evanoff should be responsible for the entire $43,000.

¶ 56    "As a general rule, attorney fees are the responsibility of the party who incurred the fees." *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 656 (2007). However, sections 508(a) and 503(j) of the Act permit a circuit court to order a party to contribute to the other party's reasonable attorney fees in light of the parties' respective financial situations. 750 ILCS 5/508(a), 503(j) (West 2012). "A party seeking an award of attorney fees must show that he or she is unable to those pay fees and the other party is able to do so." *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 479 (1999). A party is unable to pay his fees if the payment would strip him of his means to support or undermine his financial stability. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). "Whether or not the trial court erred in ordering a contribution award after considering the fees the petitioner incurred is reviewed under an abuse of discretion standard." *In re Marriage of Nesbitt*, 377 Ill. App. 3d at 656.

¶ 57    The circuit court did not abuse its discretion in its attorney fees award. Tomasek admits that he incurred $105,000 in attorney fees and that when his fee petition was filed, $62,000 had been paid by Evanoff. Tomasek alleges that the money Evanoff used came from the marital estate. The record does not support this contention. No evidence was introduced by either party concerning the origin of the funds used to pay the attorneys. While he argues that he does not have the financial ability to pay, he provides no facts to demonstrate that requiring him to pay the remaining balance will undermine his financial stability. Based on the award of maintenance, the division of the marital assets and debts, and Tomasek's failure to demonstrate how the payment of fees will undermine his financial stability, the circuit court's award of attorney fees was not an abuse of discretion.

¶ 58    Next, Tomasek challenges the circuit court's decision to defer to the Internal Revenue Service guidelines concerning who may claim the children as dependents for tax purposes. The divorce judgment awarded the dependency tax exemptions to Evanoff; however, after Tomasek moved for reconsideration of the issue, the court vacated its prior ruling and deferred to the federal guidelines on the issue. "The allocation of the tax exemption is an element of support, over which a trial court has considerable discretion." *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 100 (1990). The allocation should be based on which parent contributes the

majority of support. *In re Marriage of Moore*, 307 Ill. App. 3d 1041, 1043 (1999). The circuit court's allocation of dependency exemptions for the parties' children is subject to review for an abuse of discretion. *In re Marriage of Fowler*, 197 Ill. App. 3d at 99.

¶ 59 The dependency tax credit for divorced parents is governed by section 152(e) of the Internal Revenue Code. 26 U.S.C. § 152(e) (2012). It provides that generally the custodial parent gets to claim the exemption, but provides for three exceptions to this general rule. 26 U.S.C. § 152(e)(2) (2012). However, Tomasek does not cite this section in support of his argument. Tomasek's argument is simply that the tax exemptions are worth more to him than to Evanoff. This argument is both unpersuasive and pure speculation. Nothing in the record establishes who would benefit most for claiming the exemption. A stronger argument can be made that Evanoff is entitled to the dependency tax credit. Throughout the divorce proceedings the children lived in the marital residence and were supported almost exclusively by her. The divorce judgment assigned responsibility for the two daughters' future living expenses during the pendency of college to her. Notwithstanding, the circuit court exercised its discretion and choose to defer to the Internal Revenue Code. Based on the record and the arguments presented, the circuit court did not abuse its discretion.

¶ 60 Finally, Tomasek argues that Evanoff should be required to turn over her tax returns every year to ensure she is providing him with the Arthur Andersen distributions. The divorce judgment was silent as to these payouts but the circuit court did address them in Tomasek's motion to reconsider. In addressing the distributions, the court acknowledged that Evanoff does not receive notice that a distribution is coming or how much it will be. The court ordered that Evanoff provide Tomasek with 50% of each payout after all tax implications have been paid. The court also ordered the parties to do a "true up" at the end of each year to determine if taxes were over paid or under paid. Each party would receive 50% of the overpayment or be responsible for 50% if taxes were still owed.

¶ 61 Evanoff argues that the notice issue has been waived because Tomasek never requested the exchange of tax returns or documents evidencing future distributions in either his proposed judgment for dissolution of marriage or his motion to reconsider. We agree with Evanoff that the issue has been waived. It is well settled that "[i]ssues not raised in the trial court are waived and cannot be argued for the first time on appeal." *In re Marriage of Minear*, 181 Ill. 2d 552, 564 (1998). At no point during the underlying proceedings or in his motion to reconsider did Tomasek seek any type of notice regarding how he should be informed of a distribution from Arthur Andersen. The distributions are marital assets the circuit court properly accounted for in dividing the marital estate. If Tomasek believed he was entitled to some type of notice, he should have raised the issue with the circuit court. He cannot raise it here for the first time. Accordingly, we find he has waived review of the issue.

¶ 62                                                       CONCLUSION

¶ 63 Based on the foregoing, we affirm the circuit court's dissolution of marriage judgment in all respects.

¶ 64           Affirmed.