2023 IL App (1st) 220803-U

No. 1-22-0803

Order filed August 23, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN RE MARRIAGE OF GEORGE KATTNER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| and | ) | No. 18 D 6719 |
| | ) | |
| AMANDA KATTNER, | ) | Honorable |
| | ) | John T. Carr, |
| Respondent-Appellee. | ) | Andrea M. Schleifer, and |
| | ) | Julie B. Aimen, |
| | ) | Judges, presiding. |

JUSTICE R. VAN TINE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the trial court's (1) characterization of the husband's 401(k) account as marital property; (2) finding that the wife's purported disclaimer of certain interests in cash, 401(k) accounts, and stocks was unenforceable due to lack of consideration; (3) 60/40 division of marital assets in the wife's favor; and (4) denial of the husband's motion to reconsider. We reverse the trial court's (1) disregard of the parties' stipulation that a condominium was marital property; (2) characterization of the wife's 401(k) as nonmarital property and of the husband's life insurance policy as marital property; (3) finding that the parties' postnuptial agreement was substantively unconscionable; and (4) awards of attorney fees and

costs to the wife. We remand this matter for further proceedings consistent with this order.

¶ 2 George and Amanda Kattner dissolved their marriage by agreement. The parties subsequently proceeded to a bench trial to resolve the issue of the distribution of marital assets. George appeals from the posttrial judgment of dissolution, arguing that trial court erred in (1) awarding a condominium to Amanda as nonmarital property despite the parties' stipulation that it was marital property; (2) how it characterized the parties' 401(k) accounts and George's life insurance policy as marital versus nonmarital property; (3) finding that the parties' postnuptial agreement was substantively unconscionable; (4) refusing to enforce Amanda's renunciation of certain interests in cash, 401(k) assets, and stock; (5) distributing the parties' marital assets on a 60/40 basis in Amanda's favor; (6) ordering George to pay Amanda's attorney fees in excess of $50,000; and (7) denying George's motion to reconsider. For the following reasons, we affirm in part and reverse in part, and we remand this matter for further proceedings consistent with this order.

¶ 3                                          I. BACKGROUND

¶ 4                                     A. Pretrial Proceedings

¶ 5 George and Amanda were married in 2005 and had three children during their marriage. All three children are minors. On October 9, 2018, George filed a petition for dissolution of marriage, citing irreconcilable differences.

¶ 6 For tax reasons, the parties agreed to divorce on December 31, 2018, and to bifurcate the remainder of the case, which consisted of the division of marital assets. The court held a prove-up hearing and entered a judgment of dissolution on December 31, 2018. The judgment of dissolution incorporated the parties' "partial oral settlement agreement concerning maintenance and support,"

and required George to pay Amanda $7,000 per month in unallocated maintenance for eight years. The trial court also ordered George to pay Amanda 50% of his 2018 net performance bonus. In addition, the judgment provided that George's obligation to pay Amanda's attorney fees would be "capped at $50,000.00 as the case continues and [would] be obtained from the division of marital property."

¶ 7                                    B. Trial

¶ 8      A bench trial began in February 2020 and continued periodically throughout that year.[1] The evidence established that George and Amanda were married on August 27, 2005, and initially lived in Illinois. During the marriage, George worked in procurement for Nalco Company, which later became Ecolab, Inc. He was promoted to vice president in August 2015 with a base salary of $200,000 plus variable performance bonuses. George's gross pretax earnings for 2018 were $466,898.58 and his expected direct compensation for 2018 was $376,000. Amanda worked as an event producer for Kehoe Designs from 2002 to 2009. Her base salary was $40,000, and her highest yearly earnings during that time were approximately $110,000. From 2009 to 2018, Amanda was a stay-at-home mother to the former couple's children. Amanda testified that her "earning potential ha[d] been severely impacted" because she could not leave her children alone during the day to go to work, and that "George's earning potential is way higher than" her own.

¶ 9      In 2003, prior to the marriage, Amanda bought a condominium on West Wrightwood Avenue in Chicago. During the marriage, she leased the condominium and paid the mortgage with

---

[1] The report of proceedings for February 24, 2020, indicates that the bench trial began on some earlier date, at which George gave an opening statement and introduced 23 exhibits. The report of proceedings from that earlier date is not included in the record, but the exhibits that were admitted that day are.

rental income. George refinanced the condominium in 2008 and became a co-owner along with Amanda. A quitclaim deed entered into evidence indicates that Amanda conveyed her interest in the condominium to herself and George as joint tenants on September 30, 2008. The condominium was an investment property for George and Amanda during their marriage. The parties stipulated at trial that the condominium was marital property and that its value was $125,000. As of January 2019, the balance on the condominium's mortgage was $32,294.33.

¶ 10 In 2012, the parties moved from Illinois to Minnesota and bought a house there. From 2013 to 2015, the parties and their children lived in Singapore for George's work. In 2015, the family returned to their house in Minnesota.

¶ 11 In May 2018, while living in Minnesota, the parties discussed divorce at their kitchen table and Amanda documented their discussion. The two pages that Amanda handwrote, which the parties call the "Kitchen Table Agreement" (KTA), were entered into evidence. The top of the first page states, "$200,000 salary," "alimony based off," and "5 year allimony [*sic*]." The page also states, "$60,000 bonus in the month you get it 30% capped at 60,000," and "alimony changes if salary drops below $200,000." The following lines state, "all stock not matured carved out to George" and "$100,000 of 401k carved out to George." The KTA also states "30k each kid fund" and "if options can be gifted additional $20k." The parties "agree to divorce ASAP by no later than Nov[ember] 1st 2018." The remainder of the document addresses the division of furniture, art, and vehicles. The bottom of the second page states, "We agree to the above principals [*sic*]" and is signed by both parties.

¶ 12 George testified that "carved out" meant that the assets in question would be given to him and would no longer be marital assets. The parties both testified that they did not follow all the

terms of the KTA. For example, despite agreeing to pay Amanda alimony for five years in the KTA, George later agreed to pay alimony for eight years in the December 31, 2018, judgment of dissolution. Pursuant to that judgment, Amanda received 50% of George's performance bonus rather than 30% as the KTA provided. Rather than giving each child $30,000, George and Amanda used approximately $150,000 from stock sales to establish college funds for their three children in differing amounts based on each child's age. Amanda did not receive all the furniture that the KTA designated as hers.

¶ 13    In June 2018, George presented Amanda with a typewritten document titled "Renunciation and Disclaimer of Property" (RDP), which was entered into evidence. The RDP states:

> "Pursuant to the Illinois Compiled Statutes, Chapter 755, Probate Act of 1975, Article 2 known as § 755 ILCS 5/2-7 Disclaimers. The undersigned AMANDA KATTNER chooses to exercise her right to renunciate and disclaim an interest in the property set forth below:
>
> 1) $150,000 of cash from Wells Fargo joint checking account *** held in the names of George and Amanda Kattner;
>
> 2) $100,000.00 of 401(k) from Fidelity account with Ecolab in the name of George Kattner;
>
> 3) All unvested stock and option awards from E-Trade account *** with Ecolab in the name of George Kattner."
>
> Pursuant to the applicable law of the State of Illinois, ERISA, and the Internal Revenue Code of 1986, if applicable, the undersigned hereby renounces and disclaims any interest or right to the property described in Paragraphs 1, 2, and 3.

That this renunciation and disclaimer shall be adopted for all purposes as of the date set forth below. This is an irrevocable renunciation and disclaimer and is hereby delivered to my husband George Kattner[. A] copy of the disclaimer shall be recorded in the office of the County Clerk or with the Recorder of Deeds in the County in which the property is located."

Amanda signed the RDP on June 23, 2018.

¶ 14 George testified that his attorney prepared the RDP at the suggestion of his employer's human resources department. Both parties testified that paragraph 1 of the RDP reflected their agreement that they would each receive $150,000 cash from the sale of their Minnesota home. Both parties also testified that paragraphs 2 and 3 reflected the KTA's provisions that George would receive a $100,000 "carve-out" from his 401(k) account and a "carve-out" of non-matured stock in his Ecolab account. George testified that the RDP was intended to effectuate the KTA, but he acknowledged that the RDP did not indicate that it was part of any other agreement, including the KTA. According to George, Amanda received "multiple considerations" in exchange for her disclaimer of interest in these assets, but those "considerations" did not appear in the RDP.

¶ 15 In late June 2018, the parties purchased a house in Schaumburg for Amanda and the children to live in, and then moved to Illinois. George applied for the mortgage on the Schaumburg house because Amanda could not qualify for a mortgage due to her lack of income and credit history. Amanda paid the down payment on the Schaumburg house with the $150,000 she received from the sale of the Minnesota house, and George paid the mortgage on the Schaumburg house until he and Amanda were divorced. As noted above, the parties divorced by agreement on December 31, 2018.

¶ 16    George had a 401(k) account with his employer, Ecolab, with a balance of $622,819.10 as of December 31, 2018. George estimated that he contributed more than $150,000 to that 401(k) account before the marriage.

¶ 17    Amanda had a Voya 401(k) account from her job with Kehoe Designs, which was established in 2002 or 2003. The value of the Voya 401(k) account was $21,351.44 as of 2018. A portion of the Voya account predated Amanda's marriage to George, and a portion reflected her contributions to the account during the marriage.

¶ 18    George had a life insurance policy with Northwestern Mutual. A statement from Northwestern Mutual, which was entered into evidence, indicates that George's policy was established on April 14, 2003. The value of George's policy was $25,899.83 as of November 16, 2018.

¶ 19    On April 12, 2021, the court made oral rulings on the issues raised at trial. Relevant here, the court determined that the KTA was "substantially [*sic*] unconscionable" because "[i]t gives an extra $275,000" to Amanda and "it took away substantial right[s] under maintenance." The court concluded that the RDP had "no effect at all" because "[t]here's no consideration." The court found that the Wrightwood condominium and Voya 401(k) account were Amanda's nonmarital property. The court distributed the marital assets "60 percent to [Amanda]; 40 percent to [George]," except for "the retirement accounts," which were split 50/50. The court also indicated that George's Ecolab 401(k) should be distributed 60/40 in Amanda's favor. The court found that George had already paid $42,813.84 in Amanda's attorney fees and had "to pay another $7,186.16," but that "he's limited to [$]50,000."

¶ 20 On June 2, 2021, the court entered a written supplemental judgment of dissolution. Relevant here, the court found that the KTA was "substantially [*sic*] unconscionable" because it was "vague and wanton and it d[id] not represent a fair and just agreement between the parties." The court also found that the RDP did "not provide any consideration for its execution by Amanda and none was testified to." The court awarded the Wrightwood condominium to Amanda as her nonmarital property. The court ordered the parties to divide the value of George's Ecolab 401(k) account 50/50 and ordered George to pay $7,186.16 of Amanda's attorney fees. The court's supplemental judgment purported to divide the parties' assets and liabilities pursuant to an attachment titled "Exhibit A." However, no Exhibit A is attached to the supplemental judgment.[2]

¶ 21                                  C. Attorney Fees and Costs

¶ 22 The parties disputed George's responsibility to pay Amanda's attorney fees and costs throughout this case. Near the start of the bench trial, on February 11, 2020, Amanda filed a petition for contribution to attorney fees pursuant to section 503(j) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/503(j) (West 2018)). This petition alleged that Amanda's attorneys had "been paid a total of $35,000 as and for Amanda's attorney fees and costs, including a payment of interim and prospective fees by George in the amount of $5,000" as of February 11, 2020. Amanda had an outstanding balance of $44,837.55, not including fees expected to be incurred in the upcoming trial. Amanda requested that the court order George to pay $50,000 of her attorney fees and costs, consistent with the December 31, 2018, judgment of dissolution.

---

[2] An exhibit to one of Amanda's petitions for attorney fees is what she claims is a "Marital Balance Sheet that was part of [the trial court's] final Supplemental Judgment for Dissolution of Marriage (Ex. A)."

¶ 23    During the trial, on April 8, 2020, Amanda filed a petition for interim and prospective attorney fees and costs pursuant to sections 501(c-1) and 508(a) of the IMDMA (750 ILCS 5/501(c-1), 508(a) (West 2018)). She alleged that, as of February 29, 2020, she owed her attorneys $67,813.84. Her petition requested that the trial court order George to pay that amount to her attorneys, plus $35,000 in prospective attorney fees and costs. In response, George argued that Amanda had sufficient resources to pay her own attorney fees and costs, and that a mid-trial petition for attorney fees was procedurally improper.

¶ 24    On November 2, 2021, five months after the court issued its supplemental judgment of dissolution, Amanda filed another petition for interim and prospective attorney fees and costs. Amanda alleged that she owed her attorneys $93,031.41 as of November 1, 2021, and requested that the court order George to pay the entire balance plus $50,000 in prospective fees. In response, George argued that the supplemental judgment of dissolution capped his liability for Amanda's attorney fees at $50,000, and that her attempt to obtain more attorney fees from George was barred by *res judicata*.

¶ 25    On December 16, 2021, the trial court granted Amanda's petition for attorney fees and ordered George to sell marital stock to pay $93,031.41 in interim attorney fees plus $50,000 in prospective fees. George filed a motion to reconsider, arguing that the trial court's order to sell marital stock to pay Amanda's attorney fees was both legally improper and impossible as a practical matter. The court granted the motion to reconsider in part, removing the requirement for George to sell stock, but still ordered him to pay a total of $143,031.41 for Amanda's interim and prospective attorney fees. Amanda filed three petitions for rules to show cause, alleging that George did not comply with the order to pay her attorney fees.

¶ 26                                    D. Motion to Reconsider

¶ 27    On July 1, 2021, George filed a motion to reconsider and clarify the supplemental judgment of dissolution. Relevant here, George argued that: (1) Exhibit A, the itemization of the division of marital assets, was not attached to the supplemental judgment of dissolution; (2) the supplemental judgment failed to reflect the court's oral ruling that the KTA was not procedurally unconscionable; (3) the court ignored the parties' stipulation that the Wrightwood condominium was marital property; and (4) the court ordered George to pay Amanda's attorney fees and costs despite the fact that Amanda did not file a petition for contribution under the IMDMA. In response, Amanda argued that (1) Exhibit A was unnecessary for the execution of the supplemental judgment of dissolution; (2) the court did not specifically rule that the KTA was not procedurally unconscionable; (3) the parties did stipulate that the Wrightwood condominium was marital property, but the court's finding that it was Amanda's nonmarital property took precedence over that stipulation; and (4) she filed petitions for contribution to her attorney fees on February 11, 2020, and April 8, 2020.

¶ 28    The court denied George's motion to reconsider. The court found that: (1) its April 12, 2021, oral ruling setting out the division of marital assets was clear, and Exhibit A's absence from the written supplemental judgment did not prevent that judgment from being executed; (2) it only found that the KTA was substantively unconscionable, and did not find that the KTA was *not* procedurally unconscionable; (3) George forfeited his claim of error regarding the Wrightwood condominium by his "failure to timely object;" and (4) Amanda properly filed a petition for contribution to attorney fees prior to trial.

¶ 29    George timely appealed.

¶ 30                                    II. ANALYSIS

¶ 31     On appeal, George raises seven claims of error. He contends that the trial court erred in (1) awarding the Wrightwood condominium to Amanda as nonmarital property; (2) how it characterized the parties' 401(k) accounts and George's life insurance policy as marital versus nonmarital property; (3) refusing to enforce the KTA; (4) refusing to enforce the RDP; (5) distributing the parties' marital assets on 60/40 basis in Amanda's favor; (6) ordering him to pay Amanda's attorney fees in excess of $50,000; and (7) denying his motion to reconsider. We first address the issues that the parties do not dispute.

¶ 32                            A. Wrightwood Condominium

¶ 33     The parties agree that they stipulated that the Wrightwood condominium was marital property. They also agree that the court erred by ignoring this stipulation and awarding the condominium to Amanda as nonmarital property. Moreover, the parties agree that the residence has a value of $125,000, less a mortgage of approximately $30,000.

¶ 34     Illinois courts favor stipulations that simplify and dispose of issues. *In re Marriage of Evanoff and Tomasek*, 2016 IL App (1st) 150017, ¶ 28. "Stipulations by parties or their attorneys will be enforced unless there is a proper showing the stipulation is unreasonable, violative of public policy, or the result of fraud." *Id.* "[W]hen, as here, the parties in a dissolution action enter into a stipulation as to the value and division of some portion of the marital estate, the terms of that agreement are binding upon the court." *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 776-77 (1998). "The trial court, unless it finds the agreement unconscionable as provided in section 502 of the [IMDMA], must give full effect to the terms stipulated by the parties before dividing the remainder of the marital estate." *Id.* at 777.

¶ 35    At trial, the parties stipulated that the Wrightwood condominium was marital property with a value of $125,000 and agreed that the balance of the mortgage was approximately $30,000. Neither party contends that this stipulation was unreasonable, violative of public policy, or the result of fraud. Rather, the stipulation reflects that the condominium was a jointly owned investment property during George and Amanda's marriage. The trial court was bound by the parties' stipulation that the Wrightwood condominium was marital property, and the court erred in designating it as Amanda's nonmarital property. Moreover, there was no finding by the trial court that this agreement was unconscionable.

¶ 36    In ruling on George's motion to reconsider, the trial court found that George forfeited this issue by failing to object to the court's classification of the condominium as nonmarital property. We disagree. There was no mid-trial ruling on the condominium that George could have objected to. Rather, the parties presented essentially uncontested evidence and stipulations about the condominium, which the trial court accepted. When the trial court ruled that the condominium was Amanda's nonmarital property in the supplemental judgment of dissolution, George promptly challenged that ruling in a motion to reconsider. Accordingly, we reverse the trial court's ruling on this issue and remand with instructions to follow the parties' stipulation.

¶ 37                          B. 401(k) Accounts and Life Insurance Policy

¶ 38    George next contends that the trial court erred in characterizing Amanda's Voya 401(k) account as nonmarital property, and in characterizing George's Ecolab 401(k) account and his Northwestern Mutual life insurance policy as marital property. Amanda agrees that the trial court erred in characterizing her Voya 401(k) account as nonmarital property. She asserts that the trial

court was correct in characterizing George's Ecolab 401(k) account and his Northwestern Mutual life insurance policy as marital property.[3]

¶ 39    Before property can be assigned or divided in a dissolution of marriage proceeding, the court must first characterize it as marital or nonmarital property. *In re Marriage of Gattone*, 317 Ill. App. 3d 346, 351 (2000). Property acquired before the marriage is nonmarital property, "except as it relates to retirement plans that may have both marital and non-marital characteristics." 750 ILCS 5/503(a)(6) (West 2018). All property acquired by either spouse during the marriage and before a judgment of dissolution is presumed to be marital property. 750 ILCS 5/503(b)(1) (West 2018). The presumption of marital property can be overcome only with a showing by clear and convincing evidence that the property falls into one of the categories of exceptions listed in section 503(a) of the IMDMA. 750 ILCS 5/503(a), (b)(1) (West 2018). Any doubts as to the classification of property are resolved in favor of finding that the property is marital property. *Gattone*, 317 Ill. App. 3d at 352. After classifying property, the court assigns each spouse's nonmarital property to that spouse and divides the marital property between the spouses in just proportions. *In re Marriage of Phillips*, 229 Ill. App. 3d 809, 817 (1992).

¶ 40    "Generally, the trial court's classification of an asset as marital or nonmarital will not be disturbed unless it is contrary to the manifest weight of the evidence." *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49. " '[A] decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be

---

[3] The record is not particularly clear about the trial court's characterization of George's Ecolab 401(k) account and his Northwestern Mutual life insurance policy. However, the parties do not dispute that the trial court characterized both assets as marital property, and the supplemental judgment of dissolution appears to reflect that the court intended for those assets to be divided between the parties as marital property.

unreasonable, arbitrary, or not based on the evidence.' " *Id.* (quoting *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 3).

¶ 41    We find that the trial court's characterization of Amanda's Voya 401(k) account as nonmarital property was against the manifest weight of the evidence. The evidence showed that Amanda's 401(k) was established before the marriage through her employer, Kehoe Designs. She contributed to it while employed at Kehoe both before and during the marriage. Similarly, George's 401(k) account was established through his employer, Ecolab, before the marriage, and he contributed to it before and during the marriage. These 401(k) accounts were nonmarital property before the marriage, but they became marital property through contributions from the parties' salaries, which were marital property. See *Phillips*, 229 Ill. App. 3d at 818 ("remuneration to a spouse, in whatever form, during the marriage is considered marital property."); *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 86 (a spouse's salary is "marital property when earned, being remuneration to respondent during the marriage"). That is, both 401(k) retirement accounts had marital and nonmarital characteristics, which rendered them marital property. See 750 ILCS 5/503(a)(6) (West 2018). These 401(k) accounts were essentially identical, yet the trial court reached opposite conclusions about how they should be characterized. Accordingly, we reverse the trial court's characterization of Amanda's 401(k) account as nonmarital property and affirm its characterization of George's Ecolab 401(k) account as marital property.

¶ 42    That leaves George's life insurance policy. The evidence clearly established that George acquired that policy on April 14, 2003, more than two years before the marriage. No evidence suggested that the policy became marital property. On the contrary, Amanda testified that she and George had separate life insurance policies, that she did not have access to George's policy, and

- 14 -

that they each paid their own premiums on their own policies and did not contribute to each other's policies. The trial court's apparent finding that George's life insurance policy was marital property was against the manifest weight of the evidence. Accordingly, we reverse the trial court's characterization of George's Northwestern Mutual life insurance policy as marital property.

¶ 43                                    C. Kitchen Table Agreement

¶ 44    The first fully disputed issue concerns the KTA. George argues that the trial court erred in finding the KTA to be substantively unconscionable. The KTA is essentially a postnuptial agreement, in which spouses who anticipate divorce reach an agreement as to how to divide their property before filing a petition for dissolution of marriage. See, *e.g.*, *In re Marriage of Prill*, 2021 IL App (1st) 200516, ¶¶ 3-6; *In re Marriage of Tabassum and Younis*, 377 Ill. App. 3d 761, 773 (2007).

¶ 45    The law favors amicable settlement of property rights in divorce cases, and we presume the validity of a postnuptial agreement. *Prill*, 2021 IL App (1st) 200516, ¶ 15. However, an agreement may be invalid as procedurally unconscionable, substantively unconscionable, or both. *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 14. Procedural unconscionability refers to impropriety during the process of forming a contract that deprives one of the parties of meaningful choice. *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 20. Substantive unconscionability refers to when "a clause or term in the contract is one-sided or harsh." *Id.* To be substantively unconscionable, the contract must be " 'so unfair that the court cannot enforce it consistent with the interests of justice.' " *Prill*, 2021 IL App (1st) 200516, ¶ 25 (quoting *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011)). In dissolution of marriage cases, the unconscionability analysis focuses on the parties' relative economic positions immediately

following the making of a postnuptial agreement. *In re Marriage of Arjmand,* 2013 IL App (2d) 120639, ¶ 39.

¶ 46     Whether a postnuptial agreement is unconscionable is a question of law that we review *de novo* (*Prill*, 2021 IL App (1st) 200516, ¶ 15), meaning that we perform the same analysis as the trial court (*Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 26). However, to the extent that we consider factual findings in our analysis, we review under the manifest weight of the evidence standard and will only reverse if the opposite conclusion is clearly apparent. *Prill*, 2021 IL App (1st) 200516, ¶ 15.

¶ 47     We find that the KTA is not substantively unconscionable. We see no term in the agreement that is unduly one-sided or harsh. The KTA provided for five years of alimony to Amanda based on George's $200,000 salary, plus 30% of his performance bonuses up to a maximum of $60,000. George received "carve-outs" of his unmatured stock and his 401(k) account, with the portion of his 401(k) fixed at $100,000 out of a total value of more than $620,000. Because George was given "carve-outs," it follows the KTA intended for Amanda to receive the remainder of these assets, including the majority of George's 401(k). The KTA also awarded Amanda "all furniture in [the] house" except for 13 items, and the parties split their vehicles. The KTA explicitly stated that the parties agreed to it, and both parties signed it. While the KTA is not comprehensive or artfully drafted, none of these terms are one-sided to the point of substantive unconscionability.

¶ 48     We acknowledge that the parties' economic situations immediately after signing the KTA in May 2018 were not equal. George was a corporate vice president earning a six-figure salary, whereas Amanda was a stay-at-home mother who had not worked outside the home in approximately nine years. However, the KTA did not cause this imbalance in the parties' earning

potential. Rather, that imbalance existed for years before the parties even began discussing divorce. Altogether, the KTA is not so unfair as to overcome the presumption that it is valid and enforceable. See *Prill*, 2021 IL App (1st) 200516, ¶¶ 15, 25. Rather, it represents a good-faith effort by the parties to divide their assets fairly and divorce amicably, even if it did not achieve that goal.

¶ 49    Amanda argues that the KTA awarded her alimony based on George's base salary of $200,000, whereas the IMDMA would have awarded alimony based on his gross earnings of $312,497.34 in 2017 and $425,239.00 and 2018. Similarly, she argues that the KTA limited her to five years of alimony, whereas the IMDMA would have provided eight, and that the KTA only allowed for a downward adjustment of alimony. She also contends that the KTA awarded her only 30% of George's bonuses capped at $60,000, whereas the judgment of dissolution awarded her 50% with no cap. Finally, she argues that the KTA did not disclose the value of George's stock, which had reached a value of $259,493.97 by February 2020.

¶ 50    Amanda's argument regarding maintenance is moot, as the December 31, 2018, judgment of dissolution resolved the issue of maintenance and departed from the maintenance provisions of the KTA by the parties' agreement. To the extent that Amanda suggests she could have procured a better deal by not agreeing to the KTA and, instead, waiting for an Illinois court to divide the parties' assets, that does not meet the high bar of substantive unconscionability. We do not accept the argument that the trial court's judgment of dissolution shows that the KTA was unconscionable simply because that judgment was more favorable to Amanda than the KTA. In fact, the KTA would not be substantively unconscionable even if it created an "obvious imbalance in the marital assets each party received," which it did not. See *Prill*, 2021 IL App (1st) 200516, ¶ 25. Moreover,

Amanda's argument regarding nondisclosure of the value of George's stock is unpersuasive. Illinois law does not clearly require financial disclosures in postnuptial agreements. *Tabassum*, 377 Ill. App. 3d at 777. In fact, Amanda's brief acknowledges that "the [KTA] was ostensibly a post-marital agreement, which does not require the disclosure of assets."

¶ 51    The cases that Amanda cites are distinguishable and do not compel a finding of substantive unconscionability. See, *e.g.*, *Callahan*, 2013 IL App (1st) 113751, ¶¶ 23-24 (the husband retained the entire marital estate while the wife received only a small, nonmodifiable maintenance to cover living expenses, and settlement agreement was product of the husband's fraud); *In re Marriage of Iqbal and Khan*, 2014 IL App (2d) 131306, ¶ 41 (the wife gave up all rights to the marital residence if she "unreasonably" filed for divorce but the husband was not subject to the same penalty); *In re Marriage of Richardson*, 237 Ill. App. 3d 1067, 1082-83 (1992) (postnuptial agreement was the product of duress and left the wife just 7.55% of the marital assets).

¶ 52    Finally, Amanda argues that the KTA was unenforceable because it was ambiguous. In its oral ruling of April 12, 2021, the trial court *sua sponte* found that the KTA "is ambiguous," but did not explain why. The record before us and the document itself do not support a finding of ambiguity. The trial testimony of both parties indicates that they clearly understood the terms of the KTA to the point that they could identify whether each term was followed or not. Accordingly, we reverse the trial court's ruling that the KTA is substantively unconscionable. We remand this matter so that the trial court can give effect to the KTA and, if necessary, redistribute the marital estate. See *Tabassum*, 377 Ill. App. 3d at 778.

¶ 53                    D. Renunciation and Disclaimer of Property

¶ 54    George also argues that the court erred in finding that RDP was unenforceable due to lack of consideration. On the one hand, he contends that the RDP did not require consideration as it was "merely a way to effectuate the KTA." However, he also argues that the RDP included the consideration of the KTA "such as the residence purchase, moving to Illinois, the maintenance provision, parenting plan and personal property distribution."

¶ 55    Before addressing consideration, we note that the RDP purports to follow "755 ILCS 5/2-7," which is a section of the Probate Act of 1975 that permits an heir or beneficiary to disclaim his or her interest in the succession of property. 755 ILCS 5/2-7(a) (West 2018). Typically, this occurs after someone has died. See, *e.g.*, *Roth v. Opiela*, 211 Ill. 2d 536, 540 (2004) (wife disclaimed her interest in her deceased husband's stock pursuant to section 2-7 so their children could inherit it). We have found no authority applying section 2-7 of the Probate Act to the distribution of property in a dissolution of marriage case, and George cites no such authority. We do not believe that section 2-7 of the Probate Act plays any role in this dissolution proceeding involving two living former spouses. We will treat the RDP as an attempt at a contract – specifically, a postnuptial agreement – and review the trial court's determination that it lacked consideration.

¶ 56    A contract must include an offer, an acceptance, and consideration. *Tabassum*, 377 Ill. App. 3d at 770. Consideration is a bargained-for exchange of promises. *Id.* An act or promise that benefits one party or is a detriment to the other party is sufficient to constitute consideration. *Id.* Whether a contract contains consideration is a question of law, which we review *de novo*. *Id.*

¶ 57    There is no question that "a mutual release of property rights by a husband and wife is adequate consideration to support a post-nuptial agreement." *Matter of Estate of Brousseau*, 176 Ill. App. 3d 450, 453 (1988). However, the RDP is not a mutual release of property rights. The

RDP imposed only obligations upon Amanda and conferred only benefits upon George. Specifically, the RDP required Amanda to disclaim any interest in $150,000 of cash in a joint checking account, plus $100,000 of 401(k) assets and an undisclosed value of stock. In exchange, Amanda received nothing. Amanda signed the RDP and George did not, further supporting a conclusion that the parties viewed the RDP as imposing obligations upon Amanda only. The RDP does not represent a bargained-for exchange of promises; therefore, it lacks consideration and is unenforceable.

¶ 58 George argues that the RDP incorporates the consideration of the KTA.[4] To some degree, the RDP does appear to match the KTA's provisions regarding a $100,000 "carve-out" of 401(k) assets for George and his retention of all "unvested" or "not matured" stock. However, the RDP also requires Amanda to relinquish $150,000 of a joint checking account, an obligation that does not appear in the KTA. The RDP provides nothing to Amanda in exchange for this obligation. To the extent the parties intended the RDP to modify the KTA, a modification of an existing contract is enforceable only if there is consideration for the modification. See *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 112 (1999). As explained above, the RDP contains no consideration for any of its terms, including those that might modify the KTA. We also note that the RDP itself does not claim to modify the KTA or reference the KTA at all.

¶ 59 In the trial court and in his briefs on appeal, George has insisted that the RDP is somehow necessary to comply with federal and Illinois law, or to "effectuate" the KTA. These suggestions are without merit. George's citation to federal statutes is inapplicable. See, *e.g.*, 26 U.S.C.A. §

---

[4] On the other hand, George's reply brief acknowledges that the RDP is superfluous and of no effect. According to him, "[y]ou can take the [RDP] out of the equation but it is like taking out one's appendix. It is not needed to uphold the KTA."

2518 (section of the Internal Revenue Code governing gift taxes); 29 U.S.C.A. § 1001 *et seq.* (governing the Employee Retirement Income Security Program).

¶ 60    George also argues that promissory estoppel requires enforcement of the RDP. The elements of promissory estoppel are (1) an unambiguous promise; (2) reliance on such promise by the promisee; (3) the promisor expects and foresees such reliance; and (4) the promisee relies on the promise to his injury. *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 240 (1997). This argument is also without merit. George merely concludes that "[t]hose elements would be met here" without providing any basis for this assertion. Moreover, George does not identify how nonenforcement of the RDP injured him. Presumably, his answer would be that he did not receive the carve-outs of stock and his 401(k) account identified in the RDP. However, George does not identify how much of those assets he received under the supplemental judgment of dissolution, nor does he claim that he is, in fact, worse off for the RDP not being enforced. Accordingly, we affirm the trial court's ruling that the RDP lacks consideration and is unenforceable.

¶ 61                    E. 60/40 Division of the Marital Estate

¶ 62    Next, George argues that the trial court's 60/40 division of the marital estate was in error.[5] In dissolution of marriage proceedings, a court must divide the marital property "in just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2018). The court enjoys broad discretion in the distribution of marital assets. *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1042 (2008). "An award of property in just proportions does not mean equal proportions, and a trial court does not abuse its discretion in awarding a larger share of the marital property to one party." *Id.*; see also *Evanoff*, 2016 IL App (1st) 150017, ¶ 30 ("dividing marital property in just

---

[5] The 60/40 split does not apply to the parties' retirement funds; those assets were split 50/50.

proportions does not require mathematical equality, but rather, '[t]he touchstone of proper apportionment is whether it is equitable in nature.' ") (quoting *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 661 (2008)). We review the trial court's distribution of marital property for an abuse of discretion. *In re Marriage of Polsky*, 387 Ill. App. 3d 126, 135 (2008). A trial court abuses its discretion "only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005).

¶ 63    The record somewhat hinders our review of this issue. There is no ruling regarding an itemized division of marital assets in the supplemental judgment of dissolution, and Exhibit A is not attached to the supplemental judgment. The referenced attachment may have set out the division of assets. On appeal, George does not challenge any particular monetary amount that was awarded to Amanda instead of him. Rather, he only challenges the 60/40 division of marital assets in general and argues that it should have been 50/50 instead. We therefore confine our review accordingly.

¶ 64    We find that the trial court's division of the marital estate on a 60/40 basis in Amanda's favor was not an abuse of discretion. Amanda contributed to the marriage as a homemaker for 9 years (see 750 ILCS 5/503(d)(1)(ii) (West 2018)) and remains the primary caregiver for the former couple's three children (see 750 ILCS 5/503(d)(9) (West 2018)). Moreover, George's earning power is considerably greater than Amanda's. He is a corporate vice president who has been in the workforce consistently since at least 2005, whereas Amanda has not been in the workforce consistently since 2009. See 750 ILCS 5/503(d)(5), (8) (West 2018). It was reasonable for the trial court to conclude that Amanda would require a greater share of the marital assets than George.

¶ 65    George does not address the section 503 factors or apply them to the facts of this case. To the extent he suggests that a 60/40 split of marital assets is somehow inherently inequitable, we disagree. Illinois courts have routinely approved 60/40 divisions of marital assets. See, *e.g.*, *Evanoff*, 2016 IL App (1st) 150017, ¶¶ 46-48; *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1043-44 (2008); *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 433 (1993). Accordingly, we affirm the trial court's 60/40 split of marital assets in Amanda's favor.

¶ 66                                    F. Attorney Fees

¶ 67    George also contends that the trial court erred by ordering him to pay Amanda's attorney fees in excess of the $50,000 cap in the December 31, 2018, judgment of dissolution.

¶ 68    Section 508 of the IMDMA provides that a court can order one spouse to pay reasonable attorney fees and costs necessarily incurred by the other spouse in dissolution proceedings. 750 ILCS 5/508(a) (West 2018); *In re Marriage of Pick*, 167 Ill. App. 3d 294, 304 (1988); see also *In re Marriage of Cozzi-DiGiovanni and DiGiovanni*, 2014 IL App (1st) 130109, ¶ 34.

¶ 69    The two judgments of dissolution conclusively resolved George's liability for Amanda's attorney fees and costs. The December 31, 2018, judgment of dissolution stated that "[t]he parties agree that the responsibility of [George] for [Amanda]'s attorney's fees shall be capped at $50,000.00 as the case continues and to be obtained from the division of marital property." Both parties and their attorneys signed this judgment. The June 2, 2021, supplemental judgment of dissolution required George to pay $7,186.16 from his share of the marital estate for Amanda's attorney fees, which brought his contribution up to the $50,000 cap. The supplemental judgment also stated that, after this final payment, "[e]ach party shall then be fully and solely responsible for their respective attorney's fees and costs and shall immediately satisfy their outstanding due and

owing to their respective lawyers." The language of the two judgments is unambiguous and could not possibly be interpreted as allowing Amanda to continue seeking attorney fees and costs from George in excess of $50,000 after the supplemental judgment of dissolution. Amanda's attempts to do so via section 508 petitions were essentially attempts to relitigate George's liability for her attorney fees and costs.

¶ 70    Amanda suggests that the $50,000 cap on attorney fees only applied to litigation prior to the December 31, 2018, judgment of dissolution, and that she was free to pursue additional contribution from George pursuant to section 508 for postjudgment litigation, including the trial and the motion to reconsider. We disagree. The December 31, 2018, judgment of dissolution states that "[t]he parties agree that the responsibility of [George] for [Amanda]'s attorney's fees shall be capped at $50,000.00 *as the case continues*" (emphasis added), and the language of the June 2, 2021, judgment explicitly prohibits Amanda from seeking additional attorney fees from George. Moreover, " '[p]roperty rights created by a judgment of dissolution become vested when the judgment is final, and a trial court lacks general jurisdiction to modify an order affecting these rights.' " *In re Marriage of Benson*, 2015 IL App (4th) 140682, ¶ 40 (quoting *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 116 (1991)). A trial court "does not have jurisdiction to engraft new obligations onto a dissolution judgment or otherwise equitably modify it." *Benson*, 2015 IL App (4th) 140682, ¶ 40. The December 31, 2018, judgment of resolution created a property right as to Amanda; namely, the right to a maximum of $50,000 from George to pay her attorney fees and costs. The trial court did not have jurisdiction to modify that judgment years after the fact by ordering George to pay an *additional* $143,031.41 in attorney fees. Accordingly, we reverse the

trial court's post-June 2, 2021, orders regarding George's contribution to Amanda's attorney fees and costs.

¶ 71                                    G. Motion to Reconsider

¶ 72    Finally, George contends that the trial court erred in denying his motion to reconsider. The only issue that George raised in his motion to reconsider that we have not yet addressed is whether the trial court should have attached Exhibit A, the itemization of the division of marital assets, to the supplemental judgment of dissolution.

¶ 73    The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of the existing law. *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 41. George's complaint that the trial court did not attach Exhibit A to the supplemental judgment of dissolution does not fall into any of these categories. While Exhibit A certainly would have been helpful to the resolution of this appeal, we cannot say that its absence warranted reconsideration of the trial court's supplemental judgment of dissolution. Moreover, George's motion to reconsider cited no legal authority in support of his argument that the supplemental judgment could not be executed without Exhibit A. Accordingly, we affirm the trial court's denial of George's motion to reconsider with respect to Exhibit A of the supplemental judgment of dissolution.

¶ 74                                    III. CONCLUSION

¶ 75    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County in part, reverse in part, and remand this matter for further proceedings consistent with this order. Specifically, we affirm the following judgments: (1) that George's Ecolab 401(k) account is marital property; (2) that the RDP is unenforceable due to lack of consideration; (3) the 60/40 split

of marital assets except for the retirement accounts; and (4) the denial of George's motion to reconsider with respect to Exhibit A to the supplemental judgment of dissolution. We reverse the following judgments: (1) that the Wrightwood condominium is Amanda's nonmarital property; (2) that Amanda's Voya 401(k) account is her nonmarital property; (3) that George's Northwestern Mutual life insurance policy is marital property; (4) that the KTA is substantively unconscionable; and (5) all orders for George to pay more than $50,000 in Amanda's attorney fees and costs.

¶ 76    Affirmed in part, reversed in part, cause remanded.